**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW DE LA HUNT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-CV-2171 NAB |
| | ) | |
| TOM VILLMER, | ) | |
| | ) | |
| Respondent. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the court on Petitioner Matthew De La Hunt's ("Petitioner" or "De La Hunt") Amended Petition for Writ of Habeas Corpus. (Doc. 10.) The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 5.) Because this Court has determined that De La Hunt's claims are inadequate on their face and the record affirmatively refutes the factual assertions upon which his claims are based, this Court decides this matter without an evidentiary hearing.[1] For the reasons set forth below, De La Hunt's Amended Petition for Writ of Habeas Corpus will be denied.

I.     **Background**

The following evidence, in the light most favorable to the verdict, was presented at trial[2]:

---

[1] A district court does not err in dismissing a movant's motion without a hearing if (1) the movant's "allegations, accepted as true, would not entitle" the movant to relief, or "(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Buster v. United States.*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003)) (citation and quotation marks omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (in a § 2254 case, holding that "[a] petitioner is not entitled to an evidentiary hearing ... when his claims are ... contentions that in the face of the record are wholly incredible.") Upon careful consideration, the Court has determined that Petitioner's claims do not entitle him to relief on any of the grounds asserted in his amended petition. The Court concludes that no ground of the amended petition requires further evidentiary development for its resolution. Furthermore, Petitioner fails to demonstrate that an evidentiary hearing is warranted under the applicable standards set forth in 28 U.S.C. § 2254(e)(2). Thus, his request for an evidentiary hearing will be denied.

[2] These facts are taken from the Missouri Court of Appeals' decision in De La Hunt's direct appeal. (Resp't Ex. 7). A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254(e)(1).

Officer Kyle Rosemann (Officer Rosemann) was conducting an undercover investigation of internet crimes against children in October of 2007, and in the process of such investigation created a Yahoo Chat profile under the screen name "Angela63117." The profile stated that "Angela63117" was twelve years old and lived in St. Louis, that her real name was "Angela" and her nickname was "Kiki," and that her occupation was student. The profile also listed her hobbies as hanging out with her friends and little brother and soccer. "Angela's" favorite quote was, "I want to be a rock star." Officer Rosemann said that he selected the profile to fit what he believed was indicative of what a twelve-year-old girl would be interested in.

On October 28, 2007, Officer Rosemann entered a chat room listed as a St. Louis Regional General Chat Room. He was immediately contacted by a person using the profile name "partyshack69ing." At trial, De La Hunt admitted he was the person who contacted "Angela63117." Officer Rosemann engaged in two chats with De La Hunt, one on October 28, 2007, and another on October 29, 2007. Transcripts of the chats were admitted into evidence as State's Exhibit 3. The content of the chats was clearly sexual in nature, with De La Hunt eventually requesting nude photos of "Angela" as well as sending pictures of his penis to her.

At some point during the chat, a female police officer called De La Hunt and changed her voice to try to sound like a twelve-year-old girl. When the officer identified herself as "Angela," De La Hunt said he was glad that she called and that he did not think that she would. The female officer masquerading as "Angela" said that she did not have long to talk, then said that her mom was calling and hung up.

On October 30th, Officer Rosemann and the female officer went to the Tropicana bowling alley, where De La Hunt and "Angela" had agreed to meet, and where the female officer called De La Hunt's cell number. De La Hunt said that something was not right and that she sounded older

than before. Nevertheless, he told the officer that he was in a black car and in the back row of the parking lot and that he would flash his lights. The two officers, in plainclothes but with their badges visible, left the bowling alley and went to the parking lot. They saw De La Hunt in his car. De La Hunt made eye contact with the officers as they approached the car and had what the female officer described as a deer in the headlights look. De La Hunt began to drive out of the parking lot but was blocked by a patrol car that had arrived to provide assistance.

Officer Rosemann asked De La Hunt to get out of the car, placed him under arrest, and read him his *Miranda* warnings. De La Hunt indicated that he understood the warnings and then said, "I'm in so much trouble." Officer Rosemann asked De La Hunt if he knew why the police were there, and De La Hunt said that he thought so. Officer Rosemann told De La Hunt that "Angela," the twelve-year-old girl that he had agreed to meet for sex, was not going to meet him, and that Officer Rosemann was "Angela." De La Hunt replied, "Yeah, I understand. I'm in so much trouble. I work for the DOD. I'm going to lose my job. My wife is going to kill me."

De La Hunt signed a consent for the police to search his vehicle, and Officer Rosemann found a brand new box of condoms in the driver's side door pocket. De La Hunt also signed a consent to allow the officers to search his house and seize his computers. When the officers arrived with De La Hunt at his house, he directed them to where they could find the computers. Officer Rosemann seized three laptop computers. A Dell laptop found in De La Hunt's office contained the October 28th chat between De La Hunt and Angela63117. Information on the computer also revealed that the user of that computer had visited the webpage containing the Yahoo profile of "Angela63117." A picture of a penis was also found on the computer. The office contained one of the photographs that appeared on De La Hunt's Yahoo profile.

De La Hunt did not testify or call any witnesses but did introduce into evidence the photo that he received from Officer Rosemann, along with a blow-up of that photo. On January 5, 2012, the jury convicted De La Hunt on the sole charge of attempted enticement of a child. De La Hunt waived jury sentencing prior to trial, and on February 17, 2012, the trial court sentenced De La Hunt to five-years' imprisonment without probation or parole.

On February 27, 2012, Petitioner filed a direct appeal to the Missouri Court of Appeals for the Eastern District, Case No. ED98120, claiming that the trial court erred in five respects: (1) overruling his motion to dismiss on the basis that the information did not include all essential elements of the offense of attempted enticement of a child; (2) submitting Instruction No. 6; (3) denying his motion for new trial because the State presented insufficient evidence that Petitioner took a substantial step towards enticing "Angela" for the purpose of engaging in sexual conduct with her; (4) denying his motion for new trial because the jury's verdict was against the weight of the evidence in that the State failed to prove beyond a reasonable doubt that Defendant believed that he was communicating with a child less than fifteen years of age; and (5) denying the motion to dismiss the information. The state appellate court affirmed Petitioner's conviction and sentence on January 22, 2013, and a mandate was issued on June 4, 2013. *State v. De La Hunt,* 398 S.W.3d 483 (Mo. App. E.D. 2013); (Doc. 6-7). His motion for rehearing and/or transfer to the Missouri Supreme Court was denied on March 4, 2013. *Id.*

On August 28, 2013, Petitioner filed a Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Rule 29.15, which was signed by Petitioner and his retained post-conviction counsel. (Doc. 6-9 at 6-15.) Petitioner subsequently filed a timely Amended Motion to Vacate. (Doc. 6-9 at 16-33.) In the Amended Motion, Petitioner asserted nine grounds for relief. Petitioner also moved for an evidentiary hearing as to each of the nine issues in his amended post-

conviction motion. (Doc. 6-9 at 34-43.) Petitioner's claims for post-conviction relief and request for an evidentiary hearing were denied by the Circuit Court of the County of St. Louis, 21st Judicial Circuit on October 8, 2014. (Doc. 6-9 at 53-61.)

Petitioner, through retained counsel, filed a notice of appeal with the Missouri Court of Appeals for the Eastern District, ED 102168 on October 17, 2014. (Doc. 6-9 at 62-63.) Petitioner raised eight issues on appeal from the Circuit Court's denial of post-conviction relief: (1) trial counsel was ineffective for failing to preserve an objection to the verdict director; (2) trial counsel was ineffective for failing to call fifteen different individual witnesses; (3) trial counsel was ineffective for failing to adequately investigate and cross-examine Officer Rosemann; (4) trial counsel was ineffective for advising him not to testify; (5) trial counsel was ineffective for failing to adequately investigate Petitioner's computers which were seized by the State; (6) trial counsel was ineffective for failing to request a mistrial and for failing to object in various instances; (7) appellate counsel was ineffective for failing to raise two issues on direct appeal with respect to statements made by the prosecutor during closing argument; and (8) prosecutorial misconduct on the basis that "The State failed to disclose exculpatory evidence" found on Petitioner's computer during the State's forensic examination. On November 17, 2015, the appellate court affirmed the judgment. *De La Hunt v. State,* 484 S.W.3d 349 (Mo. Ct. App. E.D. 2015); (Doc. 6-14.) Petitioner's motion for rehearing and/or transfer to the Missouri Supreme Court was denied on January 4, 2016, and his application to transfer filed in the Missouri Supreme Court was denied on April 5, 2016. *Id.*

On December 31, 2016, De La Hunt filed his original petition for writ of habeas corpus in this Court, asserting fourteen claims for habeas review. (Doc. 1.) On February 21, 2017, Respondent filed his response to the original petition, and his exhibits in support thereof. (Doc. 6.)

On June 6, 2017, this Court granted De La Hunt's motion for leave to file an amended petition, and De La Hunt filed his amended petition asserting fifteen grounds for habeas relief. (Docs. 9, 10.) On August 4, 2017, Respondent filed his response to the amended petition (Doc. 11), which relies upon the exhibits filed with Respondent's original response (Docs. 6-1–6-16.) On November 24, 2017, De La Hunt filed his traverse. (Doc. 18.)

## II.    Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 569 U.S. 413, 421 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 71-72. To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407-408). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 793 (citing *Williams*, 529 U.S. at 409). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evenstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v.*

*Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

To obtain relief based on ineffective assistance of counsel, a petitioner must establish: (1) that the trial counsel's performance fell below an objective standard of reasonableness; and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984). Both prongs of *Strickland* must be shown to succeed on a claim for ineffective assistance of counsel. *Id.* at 697. Therefore, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, then that course should be followed." *Id.*

To satisfy the first prong of *Strickland,* a petitioner must identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable, professional judgment. *Id.* at 688. Then, the court must determine whether "in light of all the circumstances, the identified actions or omissions were outside the range of professionally competent assistance." *Id.* In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To satisfy the second prong of *Strickland,* a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In determining whether sufficient prejudice does exist, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Additionally, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to law." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential

standard' of review." *Williams v. Roper,* 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance." *Bell v. Cone,* 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

## III.   Discussion

### A.  Preliminary Issues

Before addressing the merits of the amended petition, the Court must address three preliminary issues: timeliness of the amended petition; whether Petitioner meets the "in custody" requirement; and the exhibits attached to the amended petition.

### 1. Timeliness and In Custody Requirement

Petitioner filed his habeas petition asserting fourteen grounds for relief on Saturday, December 31, 2016. Petitioner completed his entire sentence on Sunday, January 1, 2017. Therefore, he was physically incarcerated and "in custody" on the day he filed his petition. After Petitioner was released from custody, he filed a motion for leave to file an amended petition on April 6, 2017, and was granted leave to file said amended petition on June 6, 2017. (Docs. 7, 9.) His amended petition includes his original fourteen grounds and a new, fifteenth ground for relief ("Ground 15"). (*See* Doc. 10.)

Respondent argues that the Court should deny the petition in its entirety due to the requirement that habeas petitions challenge state custody, and Petitioner filed his habeas petition the day before his sentence was completed. Petitioner also argues that Ground 15 does not relate

back to the original petition[3], and is therefore time-barred in addition to being barred by the in custody requirement.

The federal habeas statute gives district courts jurisdiction to entertain petitions for habeas relief only from persons who are "*in custody* in violation of the Constitution or laws or treaties of the United States." *Maleng v. Cook,* 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3) and citing 28 U.S.C. § 2254(a)). The "in custody" requirement is satisfied when the petitioner is in custody at the time the habeas petition is filed. *See Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). A federal habeas petitioner can also satisfy the "in custody" requirement if he is released from prison while his motion is still pending, or if he is on probation at the time of filing, or if he is otherwise limited by some continuing injury. *Maleng,* 490 U.S. at 492. However, a petitioner whose term has expired, and who cannot show a direct continuing injury or consequence is not "in custody." *Spencer v. Kemna,* 523 U.S. 1, 1 (1998). Collateral consequences are not enough because "negligible effects on a petitioner's physical liberty of movement are insufficient to satisfy the custody requirement." *Virsnieks v. Smith*, 521 F.3d 707, 718 (7th Cir. 2008), cert. denied, 129 S.Ct. 161 (2008).

The Court finds that the amended petition was timely filed. Although the Court did not grant leave to file the amended petition until June 6, 2017, Petitioner sought leave to file the amended petition on April 6, 2017, just before the statute of limitations expired.  *See Mayes v. AT & T Info. Sys., Inc.*, 867 F.2d 1172, 1173 (8th Cir. 1989) (where petition for leave to amend a complaint is filed prior to the expiration of the statute of limitations, and the grant of leave and filing of the amended complaint have occurred after the limitations period has expired, the amended complaint is deemed filed within the limitations period). Therefore, the amended petition

---

[3] Respondent concedes that the fourteen grounds raised in the original habeas petition and the amended petition appear to be timely. (Doc. 11 at 12.)

and Ground 15 are not time-barred. However, whether Ground 15 is barred by the in custody requirement is a closer question.

The Eighth Circuit allows a petitioner to maintain his habeas petition despite being released from custody while the petition is pending. *Beets v. Iowa Dep't of Corr. Servs.,* 164 F.3d 1131, 1133 n. 2 (8th Cir. 1999); *Duckworth v. Prudden*, No. 4:13-CV-02587-JCH, 2016 WL 2803152, at 6 n. 1 (E.D. Mo. May 13, 2016) (relying on *Beets*). Here, because Petitioner was in custody on the the date he filed his original habeas petition, he has met the in custody requirement with respect to the fourteen grounds contained therein. *See Carafas*, 391 U.S. at 238 (1968) ("[O]nce the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application."). However, Ground 15 was filed in 2017, after Petitioner was no longer incarcerated. Therefore, in order to maintain Ground 15 of his amended petition, Petitioner must show a direct continuing injury or consequence to satisfy the "in custody" requirement. *Maleng,* 490 U.S. at 492.

To establish a direct continuing injury or consequence, Petitioner asserts that his post-release consequences require him to register as a convicted sex offender and "result in real disadvantages" sufficient to avoid mootness of his habeas petition. (Doc. 18 at 5.) While the Eighth Circuit has yet to address whether state mandatory requirements to register as a sex offender may be considered a direct continuing injury rather than a mere collateral consequence, a vast majority of courts have considered the issue and rejected arguments similar to Petitioner's. *See, e.g., Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070, 1074 (10th Cir. 2014) ("we join the circuits uniformly holding that the requirement to register under state sex-offender registration statutes does not satisfy § 2254's condition that the petitioner be 'in custody' at the time he files a habeas petition"); *Wilson v. Flaherty*, 689 F.3d 332, 337 (4th Cir. 2012) (considering two different

registration statutes because petitioner moved between states, the Court noted that "every court of appeals to have considered whether the registration requirements imposed on sex offenders place the sex offender in custody for purpose of habeas jurisdiction has concluded that they do not"); *Virsnieks v. Smith*, 521 F.3d 707, 720 (7th Cir. 2008) (collecting cases and interpreting Wisconsin sex offender statute).

District courts within the Eighth Circuit agree that "[c]ivil commitment as a sexually violent predator and related consequences to classification are collateral consequences rather than severe restraints on liberty." *See Maxwell v. Larkins*, No. 4:08 CV 1896 DDN, 2010 WL 2680333, at *3 (E.D. Mo. July 1, 2010) (habeas petition was barred because although petitioner remained incarcerated for other crimes, he had already served his sentence for sexual abuse at the time he filed his habeas petition); *Hansen v. Marr*, 594 F. Supp. 2d 1097, 1100 (D. Neb. 2009) ("Where sex offender registration statutes are remedial, rather than punitive, 'the registration requirements resemble more closely those collateral consequences of a conviction that do not impose a severe restriction on an individual's freedom of movement' and do 'not satisfy the in custody requirements.'") (internal quotations omitted). Accordingly, because Petitioner has failed to show that he was in custody pursuant to § 2254 when he filed Ground 15, Ground 15 is barred. Moreover, Ground 15 fails on its merits, as is shown below.

### 2. Petitioner's New Exhibits

Petitioner attaches nine exhibits to his Amended Petition. (Docs. 10-1 through 10-9.) These exhibits include affidavits from purported experts who have reviewed the state court record, character references from persons who know Petitioner, and an evaluation from a psychiatrist who interviewed Petitioner. With the exception of the character references, these exhibits are all dated for 2016 and 2017, and appear to be generated specifically for Petitioner's habeas petition.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *See Cullen v. Pinholster,* 563 U.S. 170, 181 (2011); 28 U.S.C. § 2254(d)(2) (providing that a claim shall not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts ***in light of the evidence presented in the State court proceeding***") (emphasis added). Further, "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Id.* at 1401. The restriction on the admissibility of new evidence ensures that federal courts do not become an alternative forum for adjudicating facts and issues in cases which the prisoner made insufficient effort to pursue in state court. *Id.* (citation and internal quotations omitted). To expand the record, a petitioner must show "'that his claim relies upon a new, retroactive law, or due diligence could not have previously discovered the facts.'" *Mark v. Ault,* 498 F.3d 775, 788 (8th Cir. 2007) (quoting *Cox v. Burger,* 398 F.3d 1025, 1030 (8th Cir. 2005)); *see also Hall v. Luebbers*, 296 F.3d 685, 700 (8th Cir. 2002) ("Federal courts may conduct evidentiary hearings and supplement the state record only in extraordinary circumstances because of the obligation to defer to state court's factual determinations."). Furthermore, the petitioner must establish that the facts underlying the claim are sufficient to demonstrate by clear and convincing evidence that no reasonable factfinder would have found the petitioner guilty of the underlying offense absent the constitutional error. *Mark,* 498 F.3d at 788 (citation and internal quotation omitted). As explained below, Petitioner has failed to make such a showing, and expansion of the record is not warranted on the claims already presented in state court. However, the Court has considered the evidence submitted by Petitioner in determining the viability of Petitioner's claims that were not presented in state court—Grounds 13, 14, and 15. *See infra.*

### B.  Ground One

In Ground One, Petitioner alleges error in the trial court because the charging document did not require the State to prove De La Hunt had knowledge or belief that he was soliciting a person under 15 years of age. Petitioner alleges the charging document therefore failed to include every element of attempted enticement of a child. Petitioner argues that by not including the element of knowledge or belief in the charging document, he "was not put on fair notice of the knowledge required as intent." Petitioner further argues that this relieved the State of its burden to prove every element of attempted enticement of a child beyond a reasonable doubt, and so, the jury was not required to make a finding regarding Petitioner's intent.

Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied it on the merits. (Resp't Ex. 7, at 5-8.) Petitioner was tried on an information in lieu of indictment, and the information alleged:

> That [Defendant], in violation of Section 566.151, RSMo, committed the felony of attempted enticement of a child, punishable upon conviction under Section 566.151, in that between October 28, 2007 and October 30th, 2007, in the County of St. Louis, State of Missouri, the defendant who was twenty-one years of age or older, for the purpose of engaging in sexual conduct, attempted to entice ["Angela"], who was a police officer masquerading as a minor less than fifteen years of age, by having internet conversations in an attempt to entice ["Angela"] to have sexual relations, and such conduct was a substantial step toward the commission of the crime of enticement of a child less than fifteen years of age, and was done for the purpose of committing such offense of enticement of a child.

The appellate court determined the State was not required to prove Petitioner knew or reasonably believed that "Angela" was under the age of fifteen. (Resp't Ex. 7, at 6-8.) The appellate court also found that even assuming the information should have alleged that Petitioner knew or reasonably believed the person he was attempting to entice was under age 15, the record shows that Petitioner suffered no prejudice because his defense was largely based on a claimed lack of knowledge that "Angela" was under 15 years old. *Id.*

14

The decision of the Missouri Court of Appeals was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts. As an initial matter, Petitioner's characterization of the appellate court's conclusion that the enticement of a child statute and the Missouri Approved Charges do not require a defendant to believe that he was soliciting a person less than 15  years old is not a "determination of the *facts*." The Missouri Court of Appeals' conclusion was one of law, based on a review of the Missouri statute and Missouri Approved Charges, not based on evidence presented at trial. *See Ryan v. Clark,* 387 F.3d 785, 791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)) (A State court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record."). The appellate court found the information followed the MAI-approved charge for attempted enticement of a child, which does not require language indicating knowledge of the age of the person he is attempting to entice. *See* MACH-CR 20.37.2 (Sept. 1, 2008). The appellate court relied on *McCoy v. State* in explaining that an information which substantially complies with court-approved forms is not insufficient. *See* 768 S.W.2d 127, 129 (Mo. App. E.D. 1989). The appellate court further found that the statute for enticement of a child also does not require that a defendant either knows or reasonably believes that the person being enticed is less than fifteen years of age. *See* Mo. Rev. Stat. § 566.151.1.[4] Thus, the crime of attempted enticement of a minor did not require knowledge

---

[4] Mo. Rev. Stat. § 566.151 states:

1. A person twenty-one years of age or older commits the offense of enticement of a child if he or she persuades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the internet or any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct.

2. It is not a defense to a prosecution for a violation of this section that the other person was a peace officer masquerading as a minor.

3. Enticement of a child or an attempt to commit enticement of a child is a felony for which the authorized term of imprisonment shall be not less than five years and not more than thirty years. No person convicted under this section shall be eligible for parole, probation, conditional release, or suspended imposition or execution of sentence for a period of five calendar years.

or belief of age as a requirement, and the information was not erroneous under Missouri law. Furthermore, the record shows that Petitioner's defense at trial was largely based on a claimed lack of knowledge that "Angela" was under the age of fifteen. Even assuming the information should have alleged Petitioner knew or reasonably believed "Angela" was under the age of fifteen, Petitioner cannot show he suffered prejudice from any purported error. *See State v. Davies,* 330 S.W.3d 775, 786-789 (Mo. App. W.D. 2010) (although there was insufficient evidence in the record to support convicting defendant of enticement of a child such that the conviction was in error, there was sufficient evidence to convict him of attempted enticement, such that a conviction of attempted enticement could be entered). The omission of that element from the information did not violate Petitioner's constitutional rights, and Petitioner suffered no prejudice as a result of the omission of a knowledge of victim's age requirement. Ground One is denied.

### C.  Ground Two

In Ground Two, Petitioner alleges the trial court erred in submitting Jury Instruction No. 6 because it did not require the jury to find Petitioner believed the victim was under fifteen in order to find him guilty.

"Ordinarily, federal habeas relief is not available in cases of faulty jury instructions." *Aldridge v. Dormire,* No. 4:06-cv-1641-CEJ, 2010 WL 883656, at *12 (E.D. Mo. Mar. 5, 2010) (citing *Estelle v. McGuire,* 502 U.S. 67, 71-72 (1991)). "State prisoners are rarely granted federal habeas corpus relief based on instructional errors, because '[the] formulation of jury instructions primarily concerns the application and interpretation of state law[.]'" *Staples v. King,* No. 09-987 (DSD/JSM), 2010 WL 3893614, at *8 (D. Minn. Sept. 14, 2010) (quoting *Louisell v. Dir. of Iowa Dep't of Corrs.,* 178 F.3d 1019, 1022 (8th Cir. 1999)). "For a petitioner to obtain relief based on a faulty jury instruction, the instruction must 'so infect[ ] the entire trial that the resulting conviction

violates due process.'" *Clemmons v. Delo,* 177 F.3d 680, 685 (8th Cir. 1999) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)).

Here, Petitioner has not demonstrated that the jury instruction was faulty or that its submission violated his due process. To the contrary, the Missouri Court of Appeals addressed the issue, comparing the MAI instruction to Instruction No. 6 under a plain error review because Petitioner did not preserve the instructional error claim in a motion for new trial. For instructional error to rise to the level of plain error, the defendant must establish not mere prejudice, but that the trial court's instructional error was so misdirected or so failed to instruct the jury that it actually affected the jury's verdict and caused manifest injustice or a miscarriage of justice. *State v. Germany,* 323 S.W.3d 472, 477 (Mo. App. E.D. 2010).

The instruction was modeled after MAI-CR3d 320.37.2, attempted enticement of a child. The MAI reads in part:

> (As to Count _____, if) (If) you find and believe from the evidence beyond a reasonable doubt: First, that (on) (on or about) [*date*], in the (City) (County) of _____, State of Missouri, the defendant [*Describe the words or actions of the defendant, such as "suggesting in an e-mail that a child less than 15 years of age go to a motel room with him." Do not use the word "attempt."*], and
> Second, that such conduct was a substantial step toward the commission of the offense of enticement of a child by attempting to (persuade) (solicit) (coax) (entice) (lure) a person less than fifteen years of age to engage in sexual conduct, and
> Third, that defendant engaged in such conduct for the purpose of committing such enticement of a child, and
> Fourth, that the defendant was twenty-one years of age or older, then you will find the defendant guilty (under Count _____) of attempted enticement of a child.
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
> A person commits the crime of enticement of a child if he is a person at least twenty-one years of age or older and he persuades, solicits, coaxes, entices, or lures a person less than fifteen years of age for the purpose of engaging in sexual conduct with the defendant.
> As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of enticement of a child. (It is no defense that it was

factually or legally impossible to commit enticement of a child if such offense could have been committed had the circumstances been as the defendant believed them to be.)

As used in this instruction, "sexual conduct" means sexual intercourse, deviate sexual intercourse or sexual contact.

As used in this instruction, "sexual intercourse" means any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose (of arousing or gratifying the sexual desire of any person) (terrorizing [*name of victim*]).

As used in this instruction, "sexual contact" means any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person.

Instruction No. 6 reads as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that between October 28, 2007 and October 30, 2007, in the County of St. Louis, State of Missouri, the defendant suggested in a chat, via the Internet, that KR., who was a peace officer masquerading as a minor less than fifteen years old, meet him for the purpose of engaging in sexual conduct, and

Second, that such conduct was a substantial step toward the commission of the offense of enticement of a child by attempting to entice a person less than fifteen years of age to engage in sexual conduct, and

Third, that defendant engaged in such conduct for the purpose of committing such enticement of a child, and

Fourth, that the defendant was twenty-one years of age or older,

then you will find the defendant guilty of attempted enticement of a child.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A person commits the crime of enticement of a child if he is a person at least twenty-one years of age or older, and he persuades, solicits, coaxes, entices, or lures a person less than fifteen years of age for the purpose of engaging in sexual conduct with the defendant.

As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of enticement of a child. It is no defense that it was factually or legally impossible to commit enticement of

a child if such offense could have been committed had the circumstances been as the defendant believed them to be.

As used in this instruction, "sexual conduct" means sexual intercourse, deviate sexual intercourse or sexual contact.

As used in this instruction, "sexual intercourse" means any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

As used in this instruction, "sexual contact" means any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person.

(Resp't Ex. 3 at 89-91.)

The appellate court found that Instruction No. 6 followed the MAI-approved instruction for attempted enticement of a child, which contains no submission of the defendant's knowledge of the age of the person he is attempting to entice. The appellate court relied on *State v. Goodine* in holding that following the MAI-approved instruction was not plain error. *See* 196 S.W.3d 607, 621 (Mo. App. S.D. 2006) (the use of an approved instruction that follows the substantive law is not plain error). Further, even if knowledge of age was a required element, its omission from the verdict directing instruction does not constitute plain error where the evidence provides clear indicia that the defendant thought he was communicating with a child. *State v. Hall,* 321 S.W.3d 453, 457 (Mo. App. S.D. 2010) (construing instruction for sexual misconduct involving a child where appellant's defense during opening and closing arguments was that he did not believe the victim was thirteen). The appellate court reviewed the evidence and found there was evidence from which the jury could conclude Petitioner believed he was communicating with a twelve-year-old girl: (1) "Angela's" profile listing her age as twelve years old; (2) "Angela" telling Movant in the

19

second line of the first chat that she was thirteen years old; (3) "Angela" repeating several more times throughout the chat that she was twelve years old; and (4) "Angela" making several references to her mother during the chats, including "Angela" stating she lived with her mother, "Angela" indicating she did not like having to abide by her mother's rules and restrictions, "Angela" indicating she would have to conceal her activities from her mother, and "Angela" indicating she was concerned she would get into trouble with her mother if her mother found out she had sex with Petitioner. The appellate court went further and found the jury could also properly make the inference from Petitioner's continual requests that "Angela" state that she was eighteen, his acknowledgement on at least one occasion that she had stated her age as younger than eighteen, his concerns about "Angela" being an undercover officer, his attempt to leave the bowling alley when police approached his car, and by statements he made after arrest that evidenced a consciousness that he had been caught engaging in illegal activity. The appellate court did not make unreasonable factual determinations in its review of the evidence.

The appellate court interpreted state law regarding the Missouri Approved Instructions. This Court may not re-examine the state court's interpretation and application of the MAI instructions and Missouri case law. *Nunley v. Bowersox*, 784 F.3d 468, 471 (8th Cir. 2015); *see also Messier v. Steele*, No. 14-3164-CV-S-GAF-P, 2014 WL 4930653, at *6 (W.D. Mo. Oct. 1, 2014) ("Jury instructions involve questions of state law," and federal courts may not re-examine determinations by a state court on matters of state law). Further, the Court finds that the state court's decision was not contrary to, nor did it involve an unreasonable application in federal law. Nothing in Petitioner's briefing and evidence demonstrates that the trial court's use of Missouri approved jury instructions violated federal law or involved an unreasonable determination of the facts. Thus, Ground Two regarding Instruction No. 6 is denied.

### D.  Ground Three

In Ground Three, Petitioner alleges the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to prove Petitioner believed he was communicating with a person less than fifteen years old. Petitioner raised this claim in his direct appeal, and the appellate court denied the claim.

Petitioner argues that the appellate court's decision was an unreasonable application of federal law and an unreasonable determination of the facts because the evidence that Petitioner believed he was communicating with a person less than fifteen years old was "nonexistent." The Court disagrees. Petitioner relies heavily on the fact that former Officer Rosemann conducted an unsupervised investigation and violated Internet Crimes Against Children protocols in the way he engaged with Petitioner. The appellate court rejected this argument when Petitioner made it on direct appeal. The appellate court explained:

> Our review of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt. [*State v.*] *Nash*, 339 S.W.3d [500,] 508-09 [(Mo. banc 2011)]. In reviewing the sufficiency of the evidence, all evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence. *Id*. at 509. All evidence and inferences to the contrary are disregarded. *Id*. We will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case. *Id*.
> Here, the evidence is sufficient to support a finding that Defendant believed he was communicating with a person less than fifteen years-of-age. Defendant viewed "Angela's" Yahoo profile that listed her age as twelve. Officer Rosemann told Defendant that "Angela" was thirteen years old. Officer Rosemann repeated several more times throughout the chat that "Angela" was twelve years old. Moreover, the jury could have inferred that Defendant believed "Angela" was under fifteen based on the following additional facts: Defendant's continual requests to have "Angela" state that she was eighteen; his acknowledgement on at least one occasion that she had stated her age as younger than eighteen; his concerns about "Angela" being an undercover officer; his attempt to leave the bowling alley when police officers approached his car; his statements made after he was arrested evidencing a consciousness that he had been caught engaging in illegal activity. Based on the

foregoing, the State presented sufficient evidence to show Defendant believed he
was communicating with a child less than fifteen.

(Resp't Ex. 7, at 15-16.)

The Supreme Court has held that in reviewing whether the evidence presented in state court
was sufficient to support a criminal conviction, "the relevant question is whether, after viewing
the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443
U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) (emphasis in original). Upon
consideration, this Court finds the cited findings of the state court in the instant case were sufficient
to justify a verdict of guilt beyond a reasonable doubt. The decision of the appellate court thus is
entitled to deference, and Ground Three is denied.

### E.  Ground Four

In Ground Four, Petitioner argues trial court error because the charging documents failed
to charge a key element of attempted enticement of a minor, instead charging attempted enticement
of a law enforcement officer.  Respondent maintains this claim is procedurally defaulted for failure
to raise it in his direct appeal and, if this Court reviews on the merits, it should find there is no
constitutional violation warranting habeas relief.

To preserve issues for federal habeas review, a state prisoner must fairly present his or her
claims to state courts during direct appeal or in post-conviction proceedings to give the state courts
a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark
v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003); *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir.
1997); *see also* 28 U.S.C. § 2254(c). A claim has been fairly presented when a petitioner has
properly raised the same factual grounds and legal theories in the state courts that he is attempting
to raise in his federal petition. *Wemark*, 322 F.3d at 1021. Claims that have not been fairly

presented to the state courts are procedurally defaulted. *Id.* at 1022 (quoting *Gray v. Netherland*,

518 U.S. 152, 161-62 (1996)).

      The Court cannot agree with Respondent's position. A review of the record demonstrates

that Petitioner exhausted the instant claim by raising it in a pre-trial motion, and then in his direct

appeal brief. (Doc. 6-4 at 38-46.) The appellate court characterized Petitioner's claim as trial court

error in denial of his motion to dismiss the information for charging attempted enticement of a

peace officer instead of attempted enticement of a minor. The appellate court explained:

> A ruling on a motion to dismiss a charging document is reviewed for an abuse of
> discretion. *State v. Cox*, 328 S.W.3d 358, 361 (Mo. App. W.D. 2010). Contrary to
> Defendant's argument, an actual victim under the age of fifteen is not an essential
> element of attempted enticement of a minor, and the information adequately alleged
> the charged offense. *See State v. Faruqui*, 344 S.W.3d 193, 202 (Mo. banc 2011)
> (for purposes of proving attempted enticement, it does not matter whether the
> defendant was communicating with an actual child, an undercover officer, or any
> other adult masquerading as a child younger than fifteen years-of-age); *see also
> Davies*, 330 S.W.3d at 785 (when a person is caught enticing someone he or she
> believes is a child but who happens to be a police officer or other person
> masquerading as a child, he is guilty of attempted enticement of a child). Here, the
> trial court did not abuse its discretion in overruling the motion to dismiss the
> information.

(Resp't Ex. 7 at 16.) Petitioner acknowledges that the issue presented is a matter of law rather than

a challenge to a factual determination. He argues that the appellate decision is an unreasonable

application of federal law in that it denied his due process rights by charging enticement of a law

enforcement officer. Petitioner has not and cannot show a deprivation of due process. The state

court's determination that the charging document adequately alleged the charged offense under a

Missouri statute is an issue of state law, not federal constitutional law, and therefore not cognizable

under § 2254(a). The determination was not an unreasonable application of clearly established

federal law. In fact, the state court relied on an analysis of state law to determine that the

information was not defective. The Court will defer to the state court's decision.[5] *See Estelle,* 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Ground Four is denied.

### F.  Ground Five

In Ground Five, Petitioner alleges trial counsel was ineffective for failure to preserve an objection to the verdict director, Instruction No. 6. Petitioner alleges the trial court's instruction failed to require the jury to find that Petitioner knew he was meeting a child. At trial, counsel objected on this basis, and it was overruled. However, trial counsel did not include the objection in his motion for new trial. Petitioner raised this claim in his amended post-conviction motion for relief pursuant to Missouri Supreme Court Rule 29.15, and the motion court found the claim to be without merit. (Resp't Ex. 9 at 17-18 and 54-55.) In so finding, the motion court and the appellate court pointed out that the Petitioner raised a claim based on the objection to Instruction No. 6 in his direct appeal, which the appellate court rejected. *See* Ground Two, discussed *supra.*

As discussed in Ground Two, Petitioner has not demonstrated that Instruction No. 6 was faulty or that its submission violated his due process. In reviewing the post-conviction relief motion, the appellate court acknowledges that in the direct appeal, the court previously concluded

---

[5] The Court also notes that under the federal enticement of a minor statute, the Eighth Circuit and other federal courts have consistently rejected the argument that § 2422(b) requires the intended victim to be an actual minor. *See, e.g., United States v. Helder,* 452 F.3d 751, 753–54 (8th Cir. 2006) (reversing district court's grant of defendant's motion for judgment of acquittal based on fact that enticed "minor" was actually a police officer); *United States v. Patten,* 397 F.3d 1100, 1103–04 (8th Cir.2005) (rejecting the defendant's insufficiency of the evidence argument based on the government's failure to prove that he intended to engage in sexual activity with a minor because "the intent that violates § 2422(b) is the intent to persuade a minor to engage in illegal sexual activity"); *United States v. Naiden,* 424 F.3d 718, 723 (8th Cir.2005) (holding that any error in the district court's exclusion of testimony that the defendant told a friend that he did not believe the person he had met online was really 14 years old did not affect the defendant's substantial rights because overwhelming evidence existed establishing the defendant's belief that "Stephanie," who was actually an undercover officer, was a minor); *United States v. Dickson,* 149 Fed.Appx. 543, 544 (8th Cir.2005) (unpublished) (holding that ample evidence existed that the defendant believed "Katie" was a 15–year–old girl, and that he took substantial steps toward persuading the minor to engage in unlawful sexual activity, even though "Katie" was actually an undercover officer). Pursuant to 18 U.S.C. § 2422(b), whoever "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in … any sexual activity…, or attempts to do so, shall be fined under this title and imprisoned…."

Petitioner "failed to show the trial court erred, plainly or otherwise, in submitting Instruction No. 6 for three separate reasons." (Resp't Ex. 14 at 9 (internal quotations omitted)). As explained in the discussion regarding Ground Two of Petitioner's claims, the appellate court found (1) that Instruction No. 6 appropriately followed the Missouri Approved Instruction for attempted enticement of a child, which contains no submission of a defendant's knowledge of the age of the person he is attempting to entice; (2) even if knowledge of the victim's age was a required element for attempted enticement, Petitioner was not prejudiced by its omission because the evidence adduced at trial provided clear indicia that Petitioner believed he was communicating with a child; and (3) the trial court did not err, plainly or otherwise, in submitting the instruction because it "contained language which did effective submit [Petitioner's] belief about the victim's age." (Resp't Ex. 14 at 9-10.) Instruction No. 6 contained language stating it was no defense that it was factually or legally impossible to commit enticement of a child if such offense could have been committed "had the circumstances been as the defendant believed them to be." The appellate court held on direct appeal that a reasonable juror could conclude from this language that Petitioner would be guilty of attempted enticement if his action were directed at a person he believed to be less than fifteen years of age.

In his habeas petition, Petitioner argues that the appellate court made its determinations based on a plain error review, and that had trial counsel preserved the objection, a more lenient standard would apply such that there is a reasonable probability of a different outcome. In support of this argument, Petitioner argues that "[b]y not including the element that the State was required to prove that the object of [Petitioner's] solicitation was a person less than 15 years of age, the jury was indirectly misled by the provided instructions that belief, scienter, and *mens rea* were not consequential or important and in fact irrelevant." (Doc. 10 at 46.) As discussed above, the

appellate court did consider whether, assuming belief was an element, Petitioner suffered any prejudice. On direct appeal, the appellate court found that "[Petitioner] has not shown that the trial court erred, *plainly or otherwise,* in submitting the [Missouri Approved Instruction]." (Resp't Ex. 7 at 13.) In reviewing the post-conviction motion and the findings on direct appeal, the appellate court stated:

> [W]e find the instant case is not one of the small number of cases in which the application of the plain-error standard of prejudice and the *Strickland* standard of prejudice will produce different results. *See Johnson v. State*, 406 S.W.3d 892, 904 (Mo. banc 2013). Accordingly, even if trial counsel had preserved an objection to Instruction No. 6 on the grounds it failed to submit to the jury Movant's knowledge of the victim's age, we find there is no reasonable probability that, but for counsel's alleged error, the outcome of the proceedings would have been different. Therefore, the motion court did not clearly err in denying Movant an evidentiary hearing on his claim that counsel failed to preserve an objection to Instruction No. 6.

(Resp't Ex. 14 at 10-11 (citing *Zink v. State,* 278 S.W.3d 170, 175-176 (Mo. banc 2009); *Martin v. State,* 386 S.W.3d 179, 182 (Mo. App. E.D. 2012)).

In light of the appellate court's interpretation and application of the MAI instructions and Missouri case law regarding those instructions, this Court cannot find that Petitioner's trial counsel failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances in failing to preserve an objection to Instruction No. 6 because it was determined by a state court to accurately conform to state law. *See Estelle,* 502 U.S. at 67-68 (it is not within the province of a federal court to re-evaluate a state court's interpretation of state law).

Additionally, Petitioner has failed to affirmatively prove prejudice. Petitioner argues that without an evidentiary hearing, the Court cannot know why trial counsel failed to preserve the issue in a motion for new trial. However, the motion court and the appellate court already found that the objection to Instruction No. 6 was without merit. Regardless of the specific reason why trial counsel did not preserve the objection in a post-trial motion, "[d]efense counsel cannot be

branded ineffective for failing to raise a non-meritorious claim in the motion for new trial. *Rice v. Wallace*, No. 4:11CV00319 SNLJ, 2014 WL 752529, at *14 (E.D. Mo. Feb. 25, 2014). Under this Court's highly deferential review of the record, the undersigned concludes the appellate court's decision affirming the denial of this ineffective assistance of counsel claim is neither contrary to, nor an  unreasonable application of, *Strickland.* Ground Five is denied.

### G.  Ground Six

In Ground Six, Petitioner argues that trial counsel was ineffective for failing to call fifteen witnesses to testify in support of Petitioner. Petitioner asserts these witnesses would have provided "crucial character and *mens rea* evidence and a defense of the charge against him." Petitioner argues that all fifteen witnesses were known by counsel prior to trial and were able to testify. He argues prejudice in that if the witnesses would have testified, there is a reasonable probability that their testimony would have changed the outcome of trial.

Petitioner's arguments were reviewed by the motion court and the appellate court. With respect to Petitioner's three proposed witnesses to opine on Petitioner's mental state, the motion court determined that trial counsel's strategy was not one of mental disease or defect, and so, it was an appropriate strategy **not** to call Dr. Caraffa, Mr. McCall, or Ms. Valentine. "Both trial counsel and Movant were clearly going for an acquittal. . . . Counsel's performance was reasonable since in light of the evidence presented, it was not credible to assert a mental defect defense or a defense of diminished capacity, which could have confused the jury. Counsel was not ineffective for not presenting testimony that might undermine his theory of defense." (Resp't Ex. 9 at 56-57.)

On appeal, the appellate court found this was not clear error:

> In this case, the only issue is whether any of the fifteen witnesses' testimony would have provided Movant with a viable defense.
> First, Movant argues Dr. Ralph Caraffa, a psychologist who treated Movant, would have testified he opined to a reasonable degree of scientific certainty that

Movant did not intend to entice a person under the age of eighteen to perform sexual acts with him. Second, Movant alleges Scott McCall would have testified concerning Movant's traumatic experiences while on active duty with the U.S. Air Force in Bosnia and that this information was relevant to Movant's mental state at the time of the offense. Movant asserts both witnesses' testimony would have demonstrated Movant did not have the intent to meet a person under the age of eighteen but instead intended to meet adult women.

Movant also alleges Donna Valentine from the Behavioral Medicine Institute of Atlanta, a professional who evaluated Movant prior to trial, would testify that based on her testing, Movant was not a pedophile and had no improper interest in women under the age of fifteen. Finally, Movant also contends McCall and twelve other witnesses (Fred Rice, Carla Thornton, Jose Adan Gutierrez, David De La Hunt, Robert B. Bennett, Kenneth J. Palucci, Gorden E. Granse, Bernie Schumacher, James Kanten, Cynthia Jacobson, Scott Rhoda, and Julie Wilson) would have testified they had known Movant "for an extended period of time in personal and work situations, and that his reputation was for being peaceful and law-abiding, and that they were unaware that he had any improper interest in persons under fifteen years of age."

Movant does not cite to any legal authority which holds that testimony from a defendant's psychologist, evaluating professional, co-worker, or friend regarding the witness's opinion about the intent or interest of a movant constitutes testimony which provides a viable defense to a crime. Similarly, Movant does not cite to any legal authority which holds that a witness's testimony regarding a movant's reputation constitutes testimony which provides a viable defense to a crime. Furthermore, we can find no such authority. Moreover, based upon the facts alleged in Movant's motion, we find none of the fifteen witnesses' alleged testimony would have provided Movant with a viable defense, i.e., none of the testimony would have established movant did not commit the crime of attempted enticement of a child or some element of the crime. *Id*. Therefore, the motion court did not clearly err in denying Movant an evidentiary hearing on his claim that counsel was ineffective for failing to call the fifteen different individuals as witnesses. *Id*. at 131.

(Resp't Ex. 14 at 11-12.)

In considering whether habeas relief is warranted, courts find trial counsel's failure to call witnesses is presumed to be reasonable trial strategy. "Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). An attorney's decision not to interview or call a particular witness must be viewed from the perspective of counsel at the time the decision was made. *United States v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). "Once an attorney

interviews a witness, it becomes largely a matter of legal judgment as to whether the witness should be called to testify." *Johnson v. Lockhart*, 921 F.2d 796, 799 (8th Cir. 1990) ("While different lawyers could reasonably arrive at different conclusions based upon the same interview, the decision to call [petitioner's] witness was clearly a matter of trial strategy.").

"To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony would have probably changed the outcome of the trial." *Siers v. Weber*, 259 F.3d 969, 974 (8th Cir. 2001). "In conducting this analysis, [the Court considers]: (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." *Id.* "[T]here is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming." *Armstrong v. Kemna*, 590 F.3d 592, 605 (8th Cir. 2010).

Here, Petitioner argues that the motion court and appellate court unreasonably applied *Strickland* and based their decisions on an unreasonable factual determination because no evidentiary hearing was held. The Court disagrees. Petitioner argues that he has letters from the character reference witnesses that evidence Petitioner's reputation as being peaceful and law-abiding, and that there was no evidence he ever had improper interest in minors.[6] (Petitioner Ex. G.) However, as the appellate court explained, Petitioner did not provide any legal authority which holds the expert and character witnesses proposed by Petitioner could provide a viable defense to a crime. Petitioner has fallen far short of overcoming the presumption that trial counsel acted in accordance with "sound trial strategy" and cannot therefore show that trial counsel was ineffective

---

[6] Petitioner did not submit letters from the three non-character witnesses, Dr. Caraffa, Ms. Valentine, and Mr. McCall. However, his Petition provides a summary of their opinion testimony and the basis therefor. (Doc. 10 at 43-44.)

in failing to call these witnesses. *See Johnson*, 921 F.2d at 799 (8th Cir. 1990) (in evaluating claims of ineffective assistance, the Court should not second guess a lawyer's trial strategy); *Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997) (finding decision not to call a witness a reasonable trial strategy); *Johnson v. Steele*, No. 4:11CV01022 SNLJ, 2014 WL 4627174, at *11 (E.D. Mo. Sept. 12, 2014) (decision whether to call witness is matter of trial strategy) (citing *Hall v. Lubbers*, 296 F.3d 685, 694 (8th Cir. 2002)); *Dorsey v. Steele*, No. 4:08–CV–2005 CEJ, 2012 WL 966818, at *5 (E.D. Mo. Mar. 21, 2012) (citations omitted) ("In order to be entitled to relief on the ground that counsel failed to call witnesses, the petitioner must [establish the witness]...would have testified if called and their testimony would have provided a viable defense....If a potential witness' testimony would not have unqualifiedly supported the petitioner, the failure to call such witness is not ineffective assistance of counsel.")

It also cannot be said that Petitioner was prejudiced by counsel's failure to call the witnesses. Petitioner does not explain how any of these witnesses could establish that Petitioner did not commit the crime of attempted enticement of a minor. Under these circumstances, the appellate court's finding that the motion court did not clearly err in denying Petitioner an evidentiary hearing on this claim was not an unreasonable determination of the facts or application of clearly established federal law. Ground Six is denied.

### H.  Ground Seven

In Ground Seven, Petitioner asserts ineffective assistance of counsel because trial counsel failed to investigate and cross-examine the testimony of State's witness Kyle Rosemann about ICAC protocols. The motion court found Petitioner's argument to be "vague, conclusory, and refuted by the record" because trial counsel "vigorously cross-examined Kyle Rosemann putting

into question his investigation, his credibility, and highlighted that the officer violated [Petitioner's] constitutional rights."[7] (Resp't Ex. 9 at 57-58 (citing Tr. 109-155)).

The appellate court applied the proper standard for evaluating whether trial counsel was effective. *See Strickland,* 466 U.S. at 694. Petitioner failed to show counsel's conduct was unreasonable or that he was prejudiced by counsel's actions. The appellate court explained why there was no misconduct by trial counsel nor resulting prejudice:

### a. Failure to Adequately Investigate

In order to succeed on a claim that trial counsel was ineffective for failing to investigate, a movant must show, (1) "counsel's failure to investigate was unreasonable"; and (2) as a result, the movant was prejudiced. *Barton [v. State]*, 432 S.W.3d [741, 757 (Mo. banc 2014).]

Movant argues trial counsel should have investigated Officer Rosemann to develop evidence that he had a personal and business motive for targeting Movant for prosecution because both men had been employed in connection with the Department of Defense. There was evidence adduced at trial that Movant was employed with the Department of Defense at the time of Officer Rosemann's investigation and Movant's arrest in October 2007 and that Officer Rosemann was employed with the Department of Defense at the time of trial in January 2012. Movant also claims in his Rule 29.15 motion that Officer Rosemann stated he worked for a Department of Defense contracted company at the time of his deposition in September 2009.

In denying Movant's claim that trial counsel was ineffective for failure to investigate, the motion court found Movant failed to show he was prejudiced as a result of counsel's alleged error. The motion court's finding is not clearly erroneous. The facts alleged in Movant's motion do not demonstrate that Officer Rosemann would have had a bias against Movant in October 2007, the time when the officer conducted his investigation of Movant and when the officer arrested Movant. Moreover, the motion does not allege how Officer Rosemann's later employment would cause him to have a personal and business motive for targeting Movant for prosecution. Accordingly, Movant failed to allege facts demonstrating there is a reasonable probability that, but for counsel's alleged errors, the outcome of the proceedings would have been different. Therefore, the motion court did not clearly err in denying his claim that counsel was ineffective for failing to adequately investigate Officer Rosemann without an evidentiary hearing. *Zink*, 278 S.W.3d at 175-76; *Martin*, 386 S.W.3d at 182.

---

[7] Officer Roseman continued a custodial interrogation after movant requested an attorney. An incriminating statement made by Petitioner at the Richmond Heights Police Station was suppressed as a result of the continued interrogation.

### b. Failure to Adequately Cross-Examine

With respect to Movant's claim that trial counsel was ineffective for allegedly failing to adequately cross-examine Officer Rosemann, Movant contends trial counsel failed to utilize or refer to the organization Internet Crimes Against Children ("ICAC") protocols during the cross-examination. Movant also asserts there is a reasonable probability of a different outcome had Officer Rosemann "been cross-examined regarding his failure to comply with these standards."

In denying Movant's claim, the motion court found Movant's claim was refuted by the record because "trial counsel vigorously cross-examined [Officer] Rosemann putting into question his investigation [and] his credibility." The motion court also found Movant failed to show he was prejudiced as a result of counsel's alleged error. The motion court's findings are not clearly erroneous.

In order to obtain post-conviction relief based on an allegation that trial counsel was ineffective for failing to adequately cross-examine a witness, "[a] [m]ovant must show that had the witness been impeached, it would have provided him with a defense or changed the outcome of the trial." *Midgyett v. State*, 392 S.W.3d 8, 15, 18 (Mo. App. W.D. 2012); *see also Gray v. State*, 139 S.W.3d 617, 619, 622 (Mo. App. W.D. 2004). Movant has not met that burden here.

A review of the record reveals that trial counsel cross-examined Officer Rosemann regarding his knowledge of the ICAC and his failure to abide by one of its protocols. Trial counsel's questioning during his cross-examination of Officer Rosemann resulted in the officer admitting: (1) the ICAC was one of the recognized authorities for Internet Crime Interdiction; (2) he never looked at ICAC protocols for a fair investigation or took any seminars offered by the organization; (3) he was not a member of the ICAC; (4) he knew generally of a protocol providing that a masquerading police officer in an internet investigation should not be the one to interject sex initially; and (5) he violated an ICAC protocol by being the first party to interject sex into the chat between "Angela" and Movant. Accordingly, the record refutes Movant's claim that counsel failed to utilize or refer to ICAC protocols when cross-examining Officer Rosemann. Furthermore, Movant's amended motion does not specify any additional protocols that trial counsel should have utilized or referred to in his cross-examination of Officer Rosemann.

Based on the foregoing, the record refutes Movant's claim and Movant has failed to allege facts demonstrating there is a reasonable probability that, but for counsel's alleged error, the outcome of the proceedings would have been different. Therefore, the motion court did not clearly err in denying Movant an evidentiary hearing on his claim that counsel was ineffective for failing to adequately cross-examine Officer Rosemann. *Id*.; *Zink*, 278 S.W.3d at 175-76; *Martin*, 386 S.W.3d at 182.

(Resp't Ex. 14 at 12-15.)

Despite Petitioner's arguments to the contrary, a review of the record shows that the appellate court did not apply *Strickland* to the facts of this case in an objectively unreasonable

manner with regard to this claim. "A state-court decision is 'unreasonable' within the meaning of § 2254(d) only when it is 'so lacking in justification that there [is] an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Daniels v. Kelley*, 881 F.3d 607, 611 (8th Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). After reviewing the trial transcript, the Court agrees with the state court's characterization of trial counsel's cross-examination of Rosemann as vigorous. The Court also finds reasonable the appellate court's determination that trial counsel was able to elicit testimony directly refuting Petitioner's claim that counsel failed to cross-examine Rosemann regarding his deficiencies and lack of training in ICAC protocol. Petitioner argues that the trial court and jury should have been educated about the serious flaws and prejudices inherent in the Rosemann investigation. But in light of the testimony elicited during Rosemann's cross-examination, there is no reasonable probability that even more evidence about Rosemann's lack of ICAC training and violation of ICAC protocol would have made a difference to the outcome of the case. Additionally, in his amended habeas petition, Petitioner still does not articulate what possible "omitted evidence" would be developed to support that Rosemann had personal and business motives for targeting Petitioner back in 2007 when Rosemann conducted his investigation. The Court finds nothing about the appellate decision that was contrary to clearly-established federal law or based on an unreasonable determination of the facts, *see* 28 U.S.C. § 2254(d), and will defer to the decision of the appellate court. Ground Seven is denied.

## I. Ground Eight

In Ground Eight, Petitioner argues he was denied effective assistance of counsel because trial counsel advised him not to testify. In particular, he alleges that his counsel advised him not to testify because counsel feared Petitioner would testify inconsistently with his suppressed statement

and open himself up to impeachment with those statements. Petitioner contends that such advice was without merit because his suppressed statements were consistent with Petitioner's defense and would not have impeached his credibility in the eyes of the jury.

Petitioner alleges he would have testified that he believed "Angela" was at least 18, he had no interest in having sex with a minor, and his internet habits were to engage solely with consenting female adults, including that on the evening of his arrest he had arranged a meeting with an adult named Nancy Smith. He alleges that if this testimony had been presented, there is a reasonable probability of a different outcome. Petitioner further argues that the decisions of the motion court and appellate court were based on an unreasonable determination of the facts because the motion court failed to hold an evidentiary hearing to inquire into whether trial counsel had a factual basis for his representation to the trial court that Petitioner made incriminating statements that were suppressed but could potentially come out during impeachment if he testified. Respondent argues that the appellate court decision that Petitioner failed to satisfy the test articulated in *Strickland* was not unreasonable and should be upheld.

A criminal defendant has a federal constitutional right to testify on his own behalf at his criminal trial. *Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987). "Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right," and that waiver must be made voluntarily and knowingly. *United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir. 1987). Although the decision to testify rests solely with the defendant, a defendant is entitled to receive reasonably competent advice concerning that right. *Jackson v. State*, 205 S.W.3d 282, 286 (Mo. Ct. App. 2006). Where a state court's finding of the attorney's advice regarding the right to testify and of the acceptance of counsel's advice are clearly supported by the record, a federal habeas court should "not second guess them." *Frey v. Schuetzle*, 151 F.3d 893,

898 (8th Cir. 1998). A trial counsel's advice not to testify is not deemed ineffective assistance of counsel if it might be considered trial strategy. *See Johnson v. Lockhart*, 921 F.2d at 800; *Drake v. Wyrick*, 640 F.2d 912, 915 (8th Cir. 1981).

Petitioner has not established his counsel was ineffective. During trial, Petitioner told the trial court he fully understood his right to testify and that it was his decision alone. At the close of evidence, the following colloquy occurred:

> The Court: Mr. De La Hunt, come up, please, sir. You [sic] are Matthew De La Hunt, the defendant in this case, sir.
> The Defendant: Yes, sir.
> The Court:  Your lawyer has indicated that it is your decision not to testify. Is that correct, sir?
> The Defendant: Yes, Your Honor.
> The Court: You understand that you have an absolute right to testify or not testify?
> The Defendant: Yes, Your Honor.
> The Court: You understand that if you were to testify in this matter, you can be cross-examined by the prosecutor when your lawyer is through asking you questions. Do you understand that?
> The Defendant: Yes, Your Honor.
> The Court: You also can be asked about prior inconsistent statements. Do you understand that?
> The Defendant: Yes, Your Honor.
> The Court: And it is still your desire not to testify?
> The Defendant: Yes, Your Honor.
> The Court: Mr. Rosenblum, any questions?
> Mr. Rosenblum: I explained to you that there are some statements you made that have been suppressed in a previous motion on a motion to suppress; that if you testify, those statements could be used to impeach your testimony if you said anything different.
>
> Additionally, you had made a writing, I think it was, wasn't it, during the time you were interrogated? That, again, could be interpreted as incriminating.
> But, nevertheless, any statement you made while you were being interrogated were suppressed and were not introduced and presented before this jury who heard your case.
>
> I explained to you that if you testified, that may not have been the case; correct?
> The Defendant: Yes, sir.
> Mr. Rosenblum: Based on that reasoning and other advice I gave you, you chose not to testify; correct?
> The Defendant: Yes, sir.

The Court: Okay, sir. I find that the defendant has made a conscious decision, voluntary decision not to testify, and feels it's in his best interest. And we'll go along with it.

(Resp't Ex. 2 at 235-236.)

The motion court determined that the record is clear that Petitioner made a knowing and voluntary waiver of his right to testify. On appeal, Petitioner argued that his argument is not that he did not know he had a right to testify; rather, he argues that trial counsel misadvised him to waive that right. (Resp't Ex. 11 at 43-47.) The appellate court reviewed Petitioner's claim on this ground, and found that the motion court's denial because the claim was refuted by the record and without merit was not clearly erroneous:

> Movant's Rule 29.15 motion alleges trial counsel's strategy was not reasonable because, had Movant testified at trial, his testimony would have been consistent with Movant's statements which were suppressed before trial, and therefore, Movant would not have been impeached with those statements. However, this allegation is conclusory, and Movant's motion fails to raise any factual allegations indicating how Movant's testimony at trial would have been consistent with any of Movant's suppressed statements. *See Martin*, 386 S.W.3d at 182 (in order for a movant to be entitled to an evidentiary hearing, his motion must, *inter alia*, allege facts, not conclusions, which, if true, would entitle the movant to relief).
>
> Moreover, we find counsel's advice to Movant that he should not testify because evidence of his suppressed statements could be introduced for impeachment purposes was sound trial strategy. *See Dishmon v. State*, 248 S.W.3d 656, 661 (Mo. App. S.D. 2008) (citing to *Morton v. State*, 718 S.W.2d 607, 610 (Mo. App. S.D. 1986) (finding counsel's advice to a defendant to testify was reasonable because if defendant elected to testify, evidence of his past criminal conduct could have been introduced for impeachment purposes)); *Wolford v. State*, 785 S.W.2d 580, 584 (Mo. App. W.D. 1990) (finding "it was not unreasonable for trial counsel to be concerned about potential inconsistencies in movant's statements that could be used for impeachment purposes" if movant testified in his own defense). Movant has not alleged exceptional circumstances or factual allegations warranting post-conviction relief. Therefore, the motion court did not clearly err in denying Movant an evidentiary hearing on his claim that counsel was ineffective for advising him not to testify. *Zink*, 278 S.W.3d at 175-76; *Martin*, 386 S.W.3d at 182; *Swims*, 966 S.W.2d at 369.

(Resp't Ex. 14 at 15-16.)

The appellate court's determination that counsel's decision advising Petitioner to not testify was sound trial strategy was not an unreasonable application of *Strickland. See* 28 U.S.C. § 2254(d)(1). Counsel articulated a valid strategic reason to advise Petitioner against testifying. In arguing that counsel did not have a strategic reason, Petitioner alleges what his testimony would have been, but he has not provided evidence nor allegations explaining how this testimony is not inconsistent with the potentially incriminating statements and writing he made during the improper interrogation. The Court need not hold an evidentiary hearing if the Petitioner fails to allege facts sufficient to justify habeas relief. *See Walker v. Griffith*, No. 4:13-CV-182 JAR, 2016 WL 630986, at *5 (E.D. Mo. Feb. 16, 2016) *(citing Townsend v. Sain*, 372 U.S. 293, 312, 83 S. Ct. 745, 757, 9 L. Ed. 2d 770 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992)).

Moreover, in light of Petitioner's testimony that he understood his right to testify and that the decision not to testify was his, it was not unreasonable for the state courts to deny Petitioner's claim that his trial counsel's advice constituted deficient performance. *See, e.g.*, *Berkovitz v. Minnesota*, 505 F.3d 827, 828 (8th Cir. 2007) (per curiam) (denying petitioner's claim that she was unduly influenced or coerced into waiving her right to testify by her counsel's conduct; finding her waiver was knowing and voluntary based on evidence that trial counsel had informed her of her right to testify, that the trial court made sure that she understood her right to testify, and that petitioner remained silent after her trial counsel rested); *Sansoucie v. Wallace*, No. 4:10–CV–2393–ACL, 2014 WL 2611802, at *4 (E.D. Mo. June 11, 2014) (state court reasonably found that trial counsel was not ineffective for failing to inform petitioner that it was his decision whether to testify in his defense, where the trial court advised petitioner of his right to testify and the petitioner testified during his trial that he understood his rights and decided not to testify after consulting

with his attorneys); *Blanchard v. Wallace*, No. 4:12–CV–1269, 2014 WL 1648891, at *2 (E.D. Mo. Apr. 24, 2014) ("Petitioner's acknowledgment of his understanding of his right to testify evidences that he voluntarily waived this right at trial."); *Liston v. Bowersox*, No. 4:06–CV–0532–AGF, 2009 WL 539941, at *8 (E.D. Mo. Mar. 4, 2009) (denying petitioner's claim that his counsel was ineffective because his counsel coerced him into not testifying; reasoning that the trial court had ascertained on the record that petitioner understood he had the right to testify and made the voluntary decision not to do so, that petitioner admitted that his trial counsel had told him the decision was his, and that petitioner remained silent after defense counsel rested). As the appellate court's determination was not contrary to federal law and did not involve an unreasonable determination of the facts in light of the evidence presented during trial, *see* 28 U.S.C. § 2254(d)(2), the decision is entitled to deference. Ground Eight is denied.

### J.  Ground Nine

In Ground Nine, Petitioner alleges that trial counsel was ineffective for failing to adequately investigate Petitioner's computers that were seized by the State. Specifically, Petitioner argues that he asked counsel for an independent forensic examination of the hard drives from his seized computers, and counsel failed to obtain the examination.

Petitioner alleges that during his state postconviction proceedings, a forensic examination was performed[8] which revealed that at the time Petitioner was interacting with "Angela," he was solely interacting online with adult women, and planned to meet another woman the evening he went to the bowling alley to meet Angela.  Petitioner argues counsel had over four years in which to obtain a forensic examination and failed to do so, despite there being no strategic reason it was

---

[8] Petitioner does not provide the Court with a citation to the record to reflect any evidence of the forensic exam.

not done, and that there is a reasonable probability of a different outcome had this evidence from the forensic exam come out at trial.

The motion court denied Petitioner an evidentiary hearing and denied Petitioner's claim for relief on this ground, relying on the State's argument that Petitioner failed to explain why the "newly-discovered" computer evidence could not have been discovered prior to trial. Petitioner knew the computer was encrypted, knew how to decrypt it, and knew the police who seized the computer were unable to decrypt it. The motion court also concluded that Petitioner failed to explain how this new evidence would have affected the result of trial.

In affirming the motion court, the appellate court relied on the prejudice prong of *Strickland.* The appellate court stated:

> … there was overwhelming evidence of Movant's guilt presented at trial; specifically, (1) Movant communicated with "Angela"; (2) Movant thought he was communicating with a child when he was communicating with "Angela"; (3) the contents of Movant's and "Angela's" chats were sexual in nature; and (4) Movant was conscious about being caught engaging in illegal activity for communicating with and attempting to meet "Angela." Accordingly, even assuming *arguendo* that counsel obtained an examination of Movant's computer and then presented evidence at trial regarding Movant's alleged communications and planned future meetings with adult women, we find there is no reasonable probability the outcome of the proceedings would have been different due to the overwhelming evidence of Movant's guilt. *See Henningfeld v. State*, 451 S.W.3d 343, 348 (Mo. App. E.D. 2014) (finding there was no reasonable probability the outcome of movant's trial would have been different where there was overwhelming evidence of movant's guilt presented at trial). Therefore, the motion court did not clearly err in denying Movant an evidentiary hearing on his claim that counsel was ineffective for failing to adequately investigate Movant's computers which were seized by the State. *Zink*, 278 S.W.3d at 175-76; *Martin*, 386 S.W.3d at 182.

(Resp't Ex. 14, at 18-19.)

The Court finds that the appellate court's ruling did not involve an unreasonable determination of the facts or an unreasonable application of clearly established federal law. Petitioner failed to demonstrate how the evidence obtained from the forensic examination of his

computers would have changed the outcome of his trial. His conclusory statement that "there is a reasonable probability of a different outcome" is insufficient to satisfy *Strickland,* and so, the Court will defer to the decision of the appellate court that Petitioner has failed to establish any alleged deficient performance prejudiced his defense. *See Strickland*, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim...to address both components of the inquiry if the [petitioner] makes an insufficient showing on one"). Ground Nine is denied.

### K.  Ground Ten

In Ground Ten, Petitioner argues trial counsel was ineffective for failing to object to various testimony and argument at trial. Petitioner raises nine specific points in the trial where trial counsel either failed to object or after a successful objection failed to seek a mistrial. Respondent contends the decision of the appellate court on these points should be upheld.

The appellate court separated these nine points into two groups: failure to request a mistrial, and failure to object to the prosecutor's closing argument. According to Petitioner, trial counsel failed to "complete" an objection after the following objections were sustained:

> 1. During her opening statement, the prosecutor said, describing Mr. De La Hunt's state of mind, "I guess he's sure it's a child now .... " Defense counsel objected. (Tr. Vol. III, 12). The Court sustained the objection and instructed the jury to disregard the comments. (Tr. Vol. III, 13). Trial counsel sought no further relief.
> 2. During the trial testimony of Kyle Rosemann, the prosecutor referred to "the child's mother" in reference to Mr. De La Hunt's chat with "Angela." (Tr. Vol. III, 44). Trial counsel objected, and the objection was sustained. However, trial counsel neither sought to have the jury instructed to disregard the remark, nor moved for a mistrial. Mr. Rosemann's testimony made it appear that there was an actual child with an actual mother.
> 3. During the trial testimony of Kyle Rosemann, the prosecutor attempted to overemphasize the officer's statements about "Angela's" age. Defense counsel objected, and the objection was sustained. (Tr. Vol. III, 53-54). The trial court instructed the jury to disregard the question. However, trial counsel failed to move for a mistrial.
> 4. During the trial testimony of Kyle Rosemann, Mr. Rosemann referred to the person with whom "Angela" was chatting as "the suspect." (Tr. Vol. III, 66). Trial

counsel objected. The trial court sustained the objection, and instructed the jury to disregard the question. However, trial counsel failed to move for a mistrial.

5. During the trial testimony of Kyle Rosemann, Mr. Rosemann testified that he "observed the suspect in the vehicle pulling out of a parking spot, attempting to leave." (Tr. Vol. III, 84). Trial counsel objected. The trial court sustained the objection, and instructed the jury to disregard the statement. However, trial counsel failed to move for a mistrial.

6. During the trial testimony of Erika Estes-Rudolph, Officer Estes-Rudolph testified in a narrative fashion when asked "What is a verification phone call?" Her answer indicated that the call was to "make sure you're not law enforcement." (Tr. Vol. III, 167-168). Trial counsel objected. The trial court sustained the objection, and instructed the jury to disregard the statement. However, trial counsel failed to move for a mistrial.

(Doc. 10 at 58-60.) On these points, the appellate court stated:

> "To prevail on a claim of ineffective assistance of counsel based on the failure to request a mistrial . . ., a movant must show that, had counsel requested the additional relief, there is a reasonable probability that the result of the trial would have been different." *Jones v. State*, 389 S.W.3d 253, 259 (Mo. App. E.D. 2012). Moreover, "[a] [m]istrial is a drastic remedy only to be exercised in extraordinary circumstances where there is no other way to remove the prejudice to the defendant." *Id*. (quotations omitted). We find Movant has failed to plead facts in his Rule 29.15 motion showing that the instances he complains of fall within the category of extraordinary circumstances where the prejudicial effect, if any, could not be removed in any other way. Accordingly, Movant has failed to show that had counsel requested the mistrial, there is a reasonable probability the result of the trial would have been different. Therefore, the motion court did not clearly err in denying Movant an evidentiary hearing on his claims that counsel was ineffective for failing to request a mistrial. *Id*.; *Zink*, 278 S.W.3d at 175-76; *Martin*, 386 S.W.3d at 182.

(Resp't Ex. 14 at 20-21.)

Petitioner also alleges trial counsel was ineffective for failing to object to the prosecutor's closing argument as follows:

> 7. During the prosecutor's final argument, the prosecutor referred to the fact that trial counsel "wants to show you" the picture of "Angela." Defense counsel objected that he was "not under obligation to do anything." The Court stated, "The defendant has no obligation to present a defense." The prosecutor then said, "He certainly does." (Tr. Vol. IV, 14). No objection was made to this contradiction of the court's correct statement of the law.
>
> 8. During the prosecutor's final argument, she told the jury that Mr. De La Hunt could be convicted if they found that he suggested that "K.R." meet him for the

purpose of engaging in sexual conduct. This argument omitted any reference to the fact that the defendant was only guilty if he believed that "K.R." was a child. No objection was made to this misstatement of the law.

9. During the prosecutor's final argument, she told the jury several times that their job was to protect children. No objection was made to this inflammatory argument.

(Doc. 10 at 60-61.) The appellate court rejected Petitioner's argument that had the objections been made, there is a reasonable probability his conviction would have been reversed on appeal. The appellate court explained:

> "Ineffective assistance of counsel is rarely found in cases of a failure to object." *Worthington v. State*, 166 S.W.3d 566, 581 (Mo. banc 2005). In order to prevail on a claim of ineffective assistance of counsel based on counsel's failure to object during a prosecutor's closing argument, the movant must show counsel's objections would have been upheld if made and that counsel's failure to object resulted in a substantial deprivation of his right to a fair trial. *Barnes v. State*, 334 S.W.3d 717, 722 (Mo. App. E.D. 2011). Movant has not met his burden in this case. In fact, neither Movant's Rule 29.15 motion nor his brief cites to any legal authority indicating counsel's objections would have been upheld if made or that counsel's failure to object resulted in a substantial deprivation of Movant's right to a fair trial. Therefore, the motion court did not clearly err in denying Movant an evidentiary hearing on his claims that counsel was ineffective for failing to object to various portions of the prosecutor's closing argument. *Id*.; *Zink*, 278 S.W.3d at 175-76; *Martin*, 386 S.W.3d at 182. Point six is denied.

(Resp't Ex. 14 at 20-21 (footnote omitted)).

As to all nine instances, Petitioner argues that the motion court "ruled in a conclusory manner" and without an evidentiary hearing, and "[t]he motion court's failure to address this claim is an unreasonable factual determination" that "was not cured by the Court of Appeals' ruling as it was based on the aforesaid unreasonable determination of the facts." (Doc. 18 at 49-50.) The Court has reviewed the trial transcript and agrees with the motion court and the appellate court that Petitioner has failed to meet his burden under *Strickland*.

First, as to the six instances where trial counsel failed to move for a mistrial, Petitioner has failed to establish any alleged deficient performance resulted in prejudice to Petitioner. As the appellate court explained, mistrial is a drastic remedy reserved for the most extraordinary circumstances. Further, a trial court has the discretion to determine whether a mistrial is necessary

42

due to prejudicial testimony, and "the admission of an unresponsive, prejudicial statement is ordinarily cured by striking the testimony and instructing the jury to disregard the remark." *Horitz v. Missouri*, No. 4:05CV01763ERW, 2009 WL 322237, at *4 (E.D. Mo. Feb. 9, 2009) *quoting United States v. Moore,* 911 F.2d 140, 143 (8th Cir. 1990). Here, Petitioner has not established that requesting the extraordinary remedy of a mistrial was reasonably likely to result in the grant of a mistrial or otherwise resulted in a different outcome. In fact, in five[9] of the six instances cited by Petitioner, the trial court sustained trial counsel's objection and instructed the jury to disregard the statements, thereby curing any potential prejudicial impact of the statements. Thus, it cannot be said that the failure of trial counsel to "complete" the objection by seeking a mistrial prejudiced his defense such that the result of the trial would have been different. *See Strickland,* 466 U.S. at 694.

Second, as to the failure to object to the prosecutor's closing argument, Petitioner has similarly failed to establish any alleged deficient performance resulting in prejudice. "In determining whether the prosecutor's closing argument violated the defendant's due process rights, the pertinent inquiry is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Sublett v. Dormire*, 217 F.3d 598, 600 (8th Cir. 2000) (internal quotation marks omitted) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Habeas relief is only warranted if the argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial. *Id.* Here, a

---

[9] In the instance where trial counsel's objection was sustained, but counsel did not request an instruction for the jury to disregard, Petitioner incorrectly characterizes the facts. (*Compare* Doc. 10 at 58-59 and Doc. 6-2, Resp't Ex. 2, at 44.) Petitioner argues that the prosecutor referred to "the child's mother" in reference to Petitioner's chat with "Angela." The transcript shows that during Rosemann's testimony, the prosecutor took him through a chat between Petitioner and "Angela," and in response to a question regarding what "Angela's" chat regarding "Mom" meant, Rosemann testified the chat "indicat[ed] that the child's mom thought that she was a lesbian." Trial counsel objected to Rosemann referring to the child, and the court sustained the objection and instructed Rosemann to refer to exactly what is in the chat. In light of the context, Petitioner cannot establish that the statement was so conspicuously prejudicial that had a mistrial been requested, it would have been granted.

review of the transcript reveals trial counsel objected multiple times during the prosecutor's

closing argument, and even asked for a mistrial on other grounds. Decisions concerning whether

and when to object are within the discretion of counsel, as are the grounds upon which

those objections are based. *Johnson v. Dormire*, No. 4:02CV1957CDP, 2005 WL 2298185, at *9

(E.D. Mo. Sept. 21, 2005) *citing Lewis v. State,* 767 S.W.2d 49, 53 (Mo.Ct.App.W.D.1989). In the

seventh instance raised above, the prosecutor, during closing argument, read from a chat exchange

that came from Petitioner's computer. The following exchange took place:

> **Prosecutor:** Okay. Let's go to the chat. This is the chat, and this is State's Exhibit No. 18 that came off the defendant's computer. Conversation, his computer actually had times and dates. What's the first thing that's addressed? Hey, where in St. Louis are you and how old are you? You see the first person that's up there is him, Partyshacking69. We've already established that he's Partyshacking69. That's on his profile. '69 is his year of birth. So we know he's more than 21. He even tells us in his profile he's in his thirties.
>
> How old are you? Why ask? Why ask how old are you? Right? You want to know. Galleria area, 13, female. The chat goes on, it goes on. Let's look at the next time. And this is like in the very beginning of the conversation age is discussed.
> **The Court:** Five minutes.
> **Prosecutor:** Thank you. Down here—got to refocus—I'm actually 12, be 13 in March. People say I look 17 or 18. Okay. How many of us in our common sense know 12 year old girls that might look older? And that's his picture that he wants you to—he wants to show you. He'll show you this picture of Angela [sic] profile.
> **Trial Counsel:** Your Honor, let me object. I'm not under an obligation to do anything.
> **Prosecutor:** Let me rephrase that.
> **The Court:** That's true. The defendant has no obligation to present any defense.
> **Prosecutor:** He certainly does. There was a picture of a profile of Angela that you saw during the evidence, and that picture, you know, we don't know the age of that person, but we know 12 year olds who look to be 18, especially when they're glammed up.

(Resp't Ex. 2, Trial Transcript Volume II at 13-14.) Based on the record, the Court finds

Petitioner's claim lacks merit. Defense counsel objected, and it appears that the prosecutor jumped

in before the trial court ruled, offering to rephrase her statement. When the prosecutor says "He

certainly does," it is possible that in attempting to rephrase, she was referring to her previous

statement that Petitioner "wants to show [the jury]" the photo of "Angela," rather than that the

Petitioner "will show" the photo. As the Supreme Court has explained,

> [C]losing arguments of counsel, are seldom carefully constructed in [total] before
> the event; improvisation frequently results in syntax left imperfect and meaning
> less than crystal clear. While these general observations in no way justify
> prosecutorial misconduct, they do suggest that a court should not lightly infer that
> a prosecutor intends an ambiguous remark to have its most damaging meaning or
> that a jury, sitting through lengthy exhortation, will draw that meaning from the
> plethora of less damaging interpretations.

*Donnelly v. DeChristoforo,* 416 U.S. 637, 646-47 (1974). Here, even assuming the prosecutor's

statement "he certainly does" was an attempt to contradict the trial court's statement of law rather

than her attempt to rephrase her prior argument, the trial court had just clarified for the jury that

Petitioner had no obligation to present a defense, and this Circuit has long recognized the jury's

"common sense ability to put aside a particular type of overzealous advocacy with the help of the

court's standard instruction that arguments of counsel are not evidence." *Sublett*, 217 F.3d at 600.

Additionally, contrary to Petitioner's argument as to the eighth and ninth instances, a review of

the trial transcript shows that trial counsel *did* object. First, trial counsel objected to prosecutor's

argument that "All I have to prove is that he engaged in these illicit chats with someone who is

posing as a child less than 15." Trial counsel objected "[t]hat's a misstatement of the law. He had

to believe that he was discussing this with an underage child." The trial court stated "[t]he jury

will be guided by the instructions as they are given and by the evidence as they recall it." (Resp't

Ex. 2, Trial Transcript Vol. II at 10.) Second, trial counsel objected to the prosecutor's references

to the jury's job to protect children. (Resp't Ex. 2, Trial Transcript Vol. II at 44-45.) In response

to trial counsel's objections and argument that to protect children "is not their job," the trial court

said "[t]he jury is instructed on their job. It's in the instructions, and they will follow the

instructions." (*Id.*) Considering all three statements, even if the Court were to find they were

improper, the Court finds that the allegedly objectionable conduct does not rise to the level of egregiousness necessary to require the declaration of a mistrial. Thus, any motion for a mistrial would not have been meritorious and trial counsel cannot be found to be ineffective for failing to raise a non-meritorious issue.[10] *See Thomas v. United States*, 951 F.2d 902, 904 (8th Cir. 1991).

In sum, the appellate court's decision that trial counsel did not render ineffective assistance of counsel was not based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d)(2). Petitioner has failed to meet *Strickland* in this instance, and Ground Ten is denied.

### L.  Ground Eleven

In Ground Eleven, Petitioner asserts ineffective assistance of appellate counsel for failure to raise two issues on direct appeal with respect to statements made during closing argument. The motion court found the claims were without merit because Petitioner failed to show there is a reasonable probability the outcome of his appeal would have been different if the issues had been raised. The appellate court reviewed both issues.

The first issue Petitioner raises is regarding the following statement from the prosecutor's closing argument:

> But when [the officers] met [Petitioner] at Tropicana [bowling alley], is there any evidence that [Petitioner] said, what are you doing, I'm here to meet eighteen-year-old Angela? Anybody say that? No. Is it the time to say it? Yeah, if it's true. He didn't think of it then . . . .

---

[10] For the first time in his traverse, Petitioner argues that post-conviction counsel was deficient for her failure to adequately state a claim that trial counsel was ineffective for failing to seek a mistrial and object to the prosecutor's closing argument. (Doc. 18 at 50.) Petitioner argues "this Court should follow *Martinez* and hold an evidentiary hearing because post-conviction counsel's performance was deficient." *Id.* For the reasons explained above, the Court finds that trial counsel cannot be found ineffective for failure to seek a mistrial and object at the points raised by Petitioner herein. Accordingly, Petitioner's claim that post-conviction counsel's performance was deficient for failure to adequately state a non-meritorious claims is without merit. *See Dyer v. United States,* 23 F.3d 1424, 1426 (8th Cir. 1994) (counsel cannot be ineffective for failing to raise a meritless argument).

(Resp't Ex. 2 at 38.) At that point, trial counsel asked for a side bar and raised his objection and asked for a mistrial based on the suggestion that Petitioner had an obligation to protest his innocence or to say anything else. The trial court sustained the objection and instructed the jury to disregard any statements made concerning what Petitioner did not say. However, the trial court denied the request for a mistrial because the court believed any improper comment could be cured by admonition. (*Id.* at 39-40.) The appellate court found that Petitioner failed to show direct appeal counsel was ineffective:

> Movant asserts appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in denying the request for a mistrial. As previously stated, "[a] [m]istrial is a drastic remedy only to be exercised in extraordinary circumstances where there is no other way to remove the prejudice to the defendant." *Jones*, 389 S.W.3d at 259. Moreover, the decision whether or not to grant a mistrial is left to the discretion of the trial court, as it is in the best position to determine whether the incident had a prejudicial effect on the jury. *State v. Ward*, 242 S.W.3d 698, 704 (Mo. banc 2008). Additionally, a prompt instruction by the trial court to the jury to disregard a comment may cure any error in a particular case. *State v. Neff*, 978 S.W.2d 341, 345 (Mo. banc 1998). In this case, Movant has failed to plead facts demonstrating the trial court abused its discretion in denying trial counsel's request for a mistrial or that the court's instruction to the jury to disregard the prosecutor's comment was insufficient. Accordingly, Movant has failed to demonstrate the claimed error was sufficiently serious as to create a reasonable probability that, if it had been raised on direct appeal, the outcome of Movant's direct appeal would have been different. Therefore, the motion court did not clearly err in denying Movant an evidentiary hearing on this claim. *Zink*, 278 S.W.3d at 175-76; *Martin*, 386 S.W.3d at 182; *Wilson*, 383 S.W.3d at 56.

(Resp't Ex. 14 at 23.)

The second issue Petitioner raises in Ground Eleven is that the prosecutor repeatedly asserted the jury's "job" was to protect children, an objection was made,[11] the trial court reminded the jury to follow instructions, and then the prosecutor repeated without objection, "[w]e have to

---

[11] Notably, this instance in Ground Eleven is in contradiction to Ground Ten of the Amended Petition, in which Petitioner argued that "During the prosecutor's final argument, she told the jury several times that their job was to protect children. No objection was made to this inflammatory argument." *Compare* Doc. 10 at 56 *with* Doc. 10 at 62.)

protect the children" rather than determine guilt beyond a reasonable doubt. (Doc. 10 at 62.) At

trial, the following exchange took place during the prosecutor's closing argument:

> **Prosecutor:** We're here because [Petitioner] was online, and the defense would have you not find him guilty unless twelve-year-old Angela came out of that Tropicana. Well, that's not the way it works. We're trying to prevent crimes. We're trying to protect children. And it's your job to protect children. This is your job to – You are the –
> **Trial Counsel:** That's an improper argument. That's not their job. Their job is to listen to facts and return a verdict that is just.
> **The Court:** Please rephrase the statement.
> **Prosecutor:** You are the only one who can protect children –
> **Trial Counsel:** Same objection, your Honor.
> **Prosecutor:** Your Honor, this is my argument, my summation.
> **Trial Counsel:** It's an improper argument, regardless of whether or not it's her argument. That is not their job.
> **The Court:** The jury is instructed on their job. It's in the instructions, and they will follow the instructions.
> **Prosecutor:** We have to protect children. The police officers did their job. . . . Now it's your job to listen to the evidence, determine if the facts meet the evidence, and to find him guilty, because I have proven him guilty beyond a reasonable doubt. . .

(Resp't Ex. 2 at 44-46.) The appellate court reviewed for plain error and held:

> Here, Movant has failed to demonstrate the plain-error claim regarding the prosecutor's references to it being the jury's "job" to protect children would have been meritorious on direct appeal because Missouri Courts have found similar arguments are not improper. *See, e.g.*, *State v. Wolf*, 326 S.W.3d 905, 908 (Mo. App. S.D. 2010) (finding a prosecutor's argument "urging jurors to uphold the law and protect children from sexual predation . . . is in appropriate argument"); *State v. Collins*, 150 S.W.3d 340, 354 (Mo. App. S.D. 2004) (finding prosecutor's comments were not improper where he stated the jury members were "the only ones who can protect the little ones" and that "if these kids are going to be saved" it was going to be by the jury). In addition, a movant is not prejudiced by a prosecutor's allegedly improper comments where, as in this case and as previously stated, there is strong evidence of the movant's guilt. *State v. Kriebs*, 978 S.W.2d 460, 467 (Mo. App. S.D. 1998).
> Because Movant has failed to demonstrate the plain-error claim regarding the prosecutor's references to it being the jury's "job" to protect children would have been meritorious on direct appeal, the motion court did not clearly err in denying Movant an evidentiary hearing on his claim that appellate counsel was ineffective for failing to raise the claim on direct appeal. *Zink*, 278 S.W.3d at 175-76; *Martin*, 386 S.W.3d at 182; *Wilson*, 383 S.W.3d at 56.

(Resp't Ex. 14 at 25.)

When a claim of ineffective assistance of counsel involves direct appeal counsel, a habeas petitioner must show that "there is a reasonable probability that the result of the direct appeal would have been different if the argument had been made." *Carter v. Bowersox,* 265 F.3d 705, 713–14 (8th Cir.2001) (citation omitted). "When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain an ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." *Link v. Luebbers,* 469 F.3d 1197, 1205 (8th Cir.2006) (citation omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.*

Here, the conclusion of the appellate court that Petitioner did not receive ineffective assistance of counsel based on direct appeal counsel's failure to appeal regarding denial of mistrial and failure to *sua sponte* declare a mistrial is not contrary to or an unreasonable application of federal law. In order to violate a defendant's due process rights, improper comments by a prosecutor "must make the entire trial fundamentally unfair." *Kellogg v. Skon,* 176 F.3d 447, 452 (8th Cir. 1999). Petitioner has not shown that to be the case in either instance. First, Petitioner argues that the prosecutor asking about Petitioner's failure to say he was meeting up with "eighteen-year-old Angela" clearly implied that Petitioner's silence was relevant to guilt. Petitioner cites to three cases, each of which purportedly "mandate a new trial." However, the cases relied on by Petitioner are distinguishable. In each of Petitioner's cases, there is no indication that the trial court admonished the jury to disregard statements about what the defendant did not say. *See Griffin v. California*, 380 U.S. 609, 611, 85 S. Ct. 1229, 1231, 14 L. Ed. 2d 106 (1965) (no objection or court admonishment regarding closing argument that "[victim] is dead, she can't tell you her side of the story. The defendant won't."); *State v. McNeal*, 517 S.W.2d 187, 188 (Mo.

49

App. 1974); *State v. McNeal*, 517 S.W.2d 187, 188 (Mo. App. 1974) (no court admonishment regarding closing argument that "defendant himself elected not to testify"); *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. ban 1970) (no objection or court admonishment regarding witness's testimony that defendant did not claim money found during a search of his apartment). Indeed, these cases do not mandate a new trial, and Petitioner has now shown that he suffered any prejudice from appellate counsel's failure to raise the claim on appeal. In light of the evidence and the court's immediate admonishment of the jury, Petitioner cannot show a reasonable probability that the jury verdict would have been different but for this argument.

Second, with respect to the comments regarding protecting children, even assuming arguendo that this was improper, "the weight of the evidence was heavy, and there is no reasonable probability that the verdict would have changed absent the comment[]." *Kellog,* 176 F.3d at 452 (denying a due process claim on the basis of the prosecutor's references to the defendant in a criminal sexual conduct trial as a "monster," a "sexual deviant," and a "liar'). Furthermore, courts have found appeals to the jury to act for the community by strictly enforcing its laws to be permissible argument. *See, e.g., Six v. Delo*, 885 F. Supp. 1265, 1285 (E.D. Mo. 1995), *aff'd,* 94 F.3d 469 (8th Cir. 1996) (rejecting argument that the prosecutor's remark was "an improper, personalized reference to the jurors' responsibilities to protect their children and as impermissibly suggesting that the jury has a duty to return a death verdict"); *Bivens v. Wyrick,* 640 F.2d 179, 181 (8th Cir. 1981) (prosecutor's general statements concerning the jury's duty to prevent crime were not improper); *Jackson v. Johnson,* 194 F.3d 641, 655 (5th Cir. 1999) (not improper for prosecutor to "appeal to jury to act as the conscience of the community" or "to emphasize the importance of deterrence"). The state court's ruling was not contrary to clearly established federal law or based on an unreasonable determination of the facts. Ground Eleven is denied.

**M. Ground Twelve**

In Ground Twelve, Petitioner argues prosecutorial misconduct in that the State withheld "key exculpatory evidence" from Petitioner's computers that Petitioner was engaging solely with other adult women.

Even under a *de novo* standard, prosecutorial misconduct does not merit federal *habeas* relief unless the misconduct infected the trial with enough unfairness to render the petitioner's conviction a denial of due process. *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002). A prosecutor's misconduct violates due process if the defendant was prejudiced by the prosecutor's actions to the extent the proceeding was fundamentally unfair. *Dodd v. Nix*, 48 F.3d 1071, 1075 (8th Cir. 1995).

Petitioner correctly states that *Brady* applies to exculpatory and impeachment evidence. In *Brady v. Maryland,* the Supreme Court held that due process requires the prosecution to produce evidence in its possession that is favorable to the defendant and material either to the issue of guilt or punishment. 373 U.S. 83, 87, 83 S. Ct 1194, 1196–97, 10 L.Ed.2d 215 (1963). Evidence is "material" if there is a "reasonable probability that, had the evidence been disclosed ... the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." *Id.* To establish a Brady violation, Petitioner bears the burden of showing the government suppressed evidence, either willfully or inadvertently, that the evidence was favorable to him either because it was exculpatory or impeaching, and that it was material to the outcome at trial. *Masten v. United States,* 752 F.3d 1142, 1146 (8th Cir. 2014).

Petitioner states that his computer contained a portion of the chat between Petitioner and Kyle Rosemann posing as "Angela," and the computer also contained chats with adult women.

Petitioner argues that the State withheld this evidence which materially negated Petitioner's intent to engage in sexual activity with a child, and would have explained the presence of condoms in his car. When he raised this claim in the appellate court, the appellate court found the claim was lacking merit for several reasons:

> "*Brady*, however, only applies in situations where the defense discovers information after trial that had been known to the prosecution at trial." *State v. Salter*, 250 S.W.3d 705, 714 (Mo. banc 2008). "If the defendant had knowledge of the evidence at the time of trial, the State cannot be faulted for nondisclosure." *Id*.
>
> In this case, the motion court found Movant's prosecutorial misconduct claim lacked merit because (1) the entire hard drive of Movant's computer was available for inspection; and (2) Movant did not demonstrate he was prejudiced as a result of the alleged suppression of evidence. The motion court's findings are not clearly erroneous.
>
> Here, Movant argues the State failed to disclose the presence of communications with adult women on Movant's computer and information that Movant had "planned to meet another woman on the evening he went to the bowling alley to encounter ["Angela"]." However, because Movant himself would have participated in those communications and because Movant himself would have made plans to meet a woman on the night he met "Angela," Movant had knowledge of that evidence at the time of trial, and therefore, no *Brady* violation occurred. *Id*.; *see also State v. Moore*, 411 S.W.3d 848, 855 (Mo. App. E.D. 2013) ("there can be no *Brady* violation where the defendant knew . . . of the [allegedly suppressed] material").
>
> Moreover, as this Court has already determined in Section II.B.5., we find that had evidence been presented at trial regarding Movant's alleged communications and planned future meetings with adult women, there is no reasonable probability the outcome of the proceedings would have been different due to the overwhelming evidence of Movant's guilt. Accordingly, Movant has not demonstrated he was prejudiced as a result of the alleged suppression of evidence. *Barton*, 432 S.W.3d at 761.

(Resp't Ex. 14 at 27.)

Here, the Court finds the state court's ruling on the merits of the claim alleging prosecutorial misconduct was not contrary to clearly established federal law, nor did it involve an unreasonable application of federal law concerning prosecutorial misconduct. Petitioner argues that the appellate court based its conclusions on the motion court's findings of fact, which were taken from the State's opposition to Petitioner's motion for an evidentiary hearing rather than

factual findings from an evidentiary hearing, making the factual findings unreasonable. The motion court found that the State had turned over all available discovery to Petitioner, including Detective Steve Grimm's forensic reports and additional electronic discovery from Petitioner's computers, and that the State made available to trial counsel the entire hard drive that had been copied. (Resp't Ex. 9 at 59.) According to the record, trial counsel referred to Detective Grimm's forensic exam during voir dire. (Resp't Ex. 1, Tr. Vol. II, at 200 ("you may hear other additional evidence in computer searches he was looking for adult relationships outside of his marital relationship.")). Trial counsel also stated in his opening statement that the government searched Petitioner's computers and found Petitioner's chats with other adult women.  (Resp't Ex. 2, Tr. Vol. III, at 18 ("and you'll see—that he was in fact looking for relationships outside the course of his marriage; adult relationships"); 21 ("In the course of the search they found what the prosecutor said and they found other chats where he was looking for adult relationships online.")). Trial counsel also elicited testimony from Detective Grimm that the forensic investigation revealed that adult dating sites were accessed on Petitioner's computer (*Id.* at 221-222), and during closing arguments trial counsel referred back to the testimony and argued about how Detective Grimm's forensic exam only came up with the "Angela" chat and sites looking for adult singles and adult relationships, not children (*Id.* at Tr. Vol. IV, 23-24.) The record reveals that trial counsel had knowledge of the forensic examination and evidence found on Petitioner's computer prior to trial, including evidence of Petitioner engaging with adult women. In addition, the evidence was not material, as it would not have changed the outcome at trial given the overwhelming evidence admitted at trial to establish Petitioner's guilt. The state court's ruling on the merits of this claim was not an  unreasonable determination of the facts. Accordingly, the Court finds no *Brady* violation occurred. Ground Twelve is denied.

### N.  Defaulted Claims: Grounds Thirteen, Fourteen, and Fifteen

#### 1.  Standard of Review for Procedurally Defaulted Claims

Petitioner's Grounds Thirteen, Fourteen, and Fifteen are procedurally defaulted and may not give rise to federal habeas relief. To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Id*. at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id*. at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner concedes he failed to raise Grounds Thirteen, Fourteen, and Fifteen before the state courts. (Doc. 10 at 85, 86, and 95.) Citing *Martinez v. Ryan*, 566 U.S. 1 (2012), Petitioner suggests his procedural default of these claims should be excused because of post-conviction counsel's ineffectiveness in failing to present them. (*Id.*) The Supreme Court created a "narrow exception" and held in *Martinez v. Ryan* that when, as in Missouri:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at

trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 9, 17. However, as explained below, *Martinez* does not apply in this instance.

### 2. Ground Thirteen

Petitioner asserts his trial counsel provided ineffective assistance for failure to obtain experts to testify regarding (a) role-playing in the context of sexually explicit conversations on the Internet; (b) how to conduct a proper online investigation and proper evidence gathering protocols; (c) computer forensics; and (d) the language used during the two internet chats and Petitioner's interrogation. Respondent argues the claim is procedurally barred, and is also without merit because the selection of witnesses is a matter of trial strategy. Respondent further argues that in light of the evidence of Petitioner's guilt, it would be reasonable to conclude that a jury would not be impressed by experts on sexually explicit conversations or linguists to bolster the theory that Petitioner somehow believed "Angela" was an adult woman.

The Court finds that Petitioner is unable to demonstrate cause sufficient to overcome the default. Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. *See Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (citing *Strickland*, 466 U.S. at 689).

The Court finds that Petitioner is unable to establish that postconviction counsel's performance was deficient. In the amended Rule 29.15 motion, counsel raised **nine** claims of ineffective assistance of trial counsel, many of which contained multiple parts, such as the claimed ineffective assistance for failure to investigate and call **fifteen** different witnesses. (Resp't Ex. 9 at 16-33.) "If, as with appellate counsel, 'one of [post-conviction] counsel's important duties is to

55

focus on those arguments that are more likely to succeed, [then] counsel will not be held to be ineffective for failure to raise every conceivable issue.'" *Sutton v. Wallace*, No. 4:13-CV-1285-CEJ, 2016 WL 4720452, at *10 (E.D. Mo. Sept. 9, 2016) (quoting *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006)). Only where stronger issues are ignored is a petitioner able to overcome the presumption of effective assistance of counsel. *Id.* (citations and quotations omitted).

The Court finds that post-conviction counsel's decision to focus on the claims set forth above was reasonable trial strategy. Petitioner makes no attempt to argue that the claims regarding use of these particular purported experts is stronger than those advanced by post-conviction counsel. *See Muhammad v. Cassady*, No. 4:13-CV-1816-SPM, 2016 WL 4493682, at *9 (E.D. Mo. Aug. 26, 2016) ("It appears that post-conviction counsel determined that the claims presented were the most meritorious claims and the ones that could be supported with evidence, and Petitioner offers no argument or evidence to overcome the presumption that counsel's decision to focus on these five claims was a reasonable strategy.").

In addition, the Court finds that the underlying defaulted claim of ineffective assistance of counsel is not substantial. "The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim." *Covington v. State*, 569 S.W.3d 469, 475 (Mo. Ct. App. 2018) (citation omitted). "'Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight.'" *Forrest v. Steele*, 764 F.3d 848, 858 (8th Cir. 2014) (quoting *Hanes v. Dormire,* 240 F.3d 694, 698 (8th Cir. 2001) (internal quotation omitted)). Because the state court has not reviewed Petitioner's ineffective assistance claim in Ground 13, the Court has reviewed the affidavits attached to the

Amended Petition in this matter, including the affidavits of purported experts in various fields relevant to the four issues raised in Ground Thirteen. (*See* Pet. Exs. A, B, D, E, F, H, J, K.)

### (a) Adult chat expert.

For issue 1, Petitioner relies on *United States v. Joseph,* 542 F.3d 13 (2d Cir. 2008) and an affidavit from the expert in that case to support his argument that his trial counsel was ineffective for failing to present an expert on role playing in the context of sexually explicit conversations on the Internet. (Doc. 10-1, Pet. Ex. A, Affidavit of James Herriot, Ph.D.) *Joseph* was not an ineffective assistance of counsel case. Rather, in *Joseph,* the defendant was convicted in the district court of using his computer to send online messages to entice an individual he believed to be an underage girl. At trial, the defendant testified on his own behalf that he thought he was role-playing, and that his online persona was "an idealized version of what … Dennis Joseph can't do but can on the [Internet]," and that he believed he was encountering an adult woman who was part of a "make-believe, pretend world." *Joseph,* 542 F.3d at 16. The district court sustained the Government's objection to Dr. Herriot's expert testimony on relevance grounds. In reversing on other grounds, the Second Circuit urged the district court to give more consideration to whether Dr. Herriot's testimony should be allowed to testify about role-playing in the context of sexually explicit conversations on the Internet. *Id.* at 22-26.

Here, Petitioner did not testify or otherwise present evidence that he believed he was engaging in fantasy role-playing; his defense was that he was looking for adult relationships outside his marriage, and he believed "Angela" was an adult woman. Moreover, the Second Circuit's discussion of the potential relevance of this type of testimony is insufficient to overcome the heavy measure of deference to trial counsel's judgment. It cannot be said that trial counsel was deficient for failure to present the testimony of Dr. Herriot or a similar expert. Additionally,

Petitioner has failed to establish prejudice. In his affidavit, Dr. Herriot concludes that "[r]esearch studies support the likelihood that [Petitioner] was engaged in a mutual creation of fiction and ***may likely have believed*** that the interlocutor was another adult"; scientific research combined with reviewing the facts of the case "***are consistent with [Petitioner] believing*** that the person he was communicating with online was indeed an adult"; and "the trial transcript shows that the defense council [sic] failed to raise many critically important points and issues that ***could have*** substantially altered the outcome." (Pet'r Ex. A at 15 (emphasis added)). Petitioner has failed to establish a reasonable probability that the testimony of an expert such as Dr. Herriot would change the outcome of his trial.

### (b) Digital forensics, online investigation, & police procedure experts.

For issues 2 and 3, Petitioner argues ineffective assistance of counsel for failure to retain a digital forensic expert to assist in obtaining all computer media necessary for review prior to trial, and failure to retain an online investigation and police procedure expert to explain how Officer Rosemann violated accepted standards and norms of online investigations. Relying on the attestations of a purported digital forensics expert and a former prosecutor specializing in crimes against children, Petitioner argues experts could assist in identifying flaws in the testimony and investigation of Officer Rosemann and could have reviewed computer data to challenge the State's evidence. (Docs. 10-4, Pet'r Ex. E, Declaration of Kevin H. Peden; 10-2, Ex. B, Affidavit of Francey Hakes; 10-3, Ex. D, Affidavit of Daniel Isom; 10-5, Ex. F, Affidavit of Lawrence A. Bonney.)

In his declaration, Mr. Peden contends he had cases where he has done a timeline analysis to discover a different person than the accused was at the keyboard at the time the alleged nefarious activity took place. (Doc. 10-4 at 5.) He does not contend that he has done a timeline analysis in

this case and that Petitioner was not the person participating in chats with Officer Rosemann. Mr. Peden also states he could have assisted trial counsel with drafting a cross exam for Officer Rosemann to elicit evidence to help the jury determine if the lack of training, experience, and professionalism exhibited by Mr. Rosemann created reasonable doubt as to the guilt of Petitioner. (*Id.* at 5-6.) He does not contend that his assistance would have changed the jury's decision regarding the guilt of Petitioner.

Ms. Hakes reiterates the flaws in Officer Rosemann's investigation, and opines that trial counsel failed to recognize or take full advantage of Rosemann's deficiencies "to [Petitioner's] great detriment." (Doc. 10-2 at 13.) She does not contend that trial counsel's purported failure to address deficiencies was the cause of the guilty verdict or that expert assistance would have changed the outcome of the trial.

Mr. Isom, the former Chief of Police for the St. Louis Police Department and Public Safety Director for the State of Missouri, opines that Petitioner was denied effective assistance of counsel for failure to call experts to explain issues with the investigation. (Doc. 10-3 at 1.) He opines the lack of investigative protocols, training, and supervision "led to ambiguity and questions regarding the strength of the evidence presented against Mr. De La Hunt." While he renders his opinion on the ultimate legal issue of ineffective assistance, Mr. Isom's factual criticisms are of Officer Rosemann's investigation, not of trial counsel's effectiveness. Mr. Isom does not elaborate on whether expert assistance would have changed the outcome of trial.

Similarly, retired FBI Agent Lawrence Bonney reviewed parts of the record and identified his concerns with the investigation, ultimately criticizing Officer Rosemann, not trial counsel. (Doc. 10-5.) Mr. Bonney speculated "[i]t is possible" that Rosemann "had been in trouble internally at his department and he was trying to look good to his superiors," and noted that

Rosemann "testified under oath that he did not follow or even know about ICAC rules, regulations and procedures."

Petitioner again cannot overcome the heavy measure of deference to trial counsel's judgment. As admitted by Mr. Bonney, Rosemann testified as to flaws in the investigation and his experience. Indeed, the record reflects that trial counsel vigorously attacked Officer Rosemann's credibility, qualifications, and investigation during cross-examination at trial. Petitioner's arguments, the Peden Declaration, and the Hakes, Isom, and Bonney Affidavits are insufficient to demonstrate that trial counsel's representation fell below an objective standard of reasonableness or that Petitioner was prejudiced by counsel's decision. The Court is not convinced by Petitioner's conclusory arguments that any of these experts would have changed the outcome of the trial. *See Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996) (quotation and citation omitted) ("To establish prejudice from counsel's failure to investigate a potential witness, a Petitioner must show that the witness would have testified and that their testimony would have probably changed the outcome").

### (c) Linguist.

For issue 4, Petitioner argues that trial counsel was ineffective for failure to retain a linguist expert to help assist in analyzing the chats admitted into evidence, Rosemann's investigation, and Petitioner's interrogation. Relying on the affidavit of a linguist who reviewed parts of the record including computer chat transcripts and Rosemann's interview of Petitioner, Petitioner argues that expert testimony would have further explained Rosemann's improper investigation and that Petitioner believed he was chatting with an adult female. (Doc. 8-1, Pet. Ex. C, Affidavit of John Baugh.) Petitioner argues that had trial counsel been aware of the importance of a linguistic expert, the outcome of the case "would have been substantially different." (Doc. 10 at 84.) However,

Petitioner fails to explain how the outcome would have been different. The record reveals that trial counsel argued the theory that Petitioner believed he was chatting with an adult. In light of the other evidence presented at trial, it cannot be said that Mr. Baugh's opinion that "the totality of direct and indirect remarks referring to age… is inconclusive; the actual age of Angela Rhodes is unclear" is likely to change the outcome of the case. (Doc. 8-1 at 9.)

In sum, trial counsel's decision not to call the experts proposed by Petitioner fell within the wide range of reasonable professional judgment, and Petitioner has not presented anything to rebut the strong presumption of competency or to otherwise show that his ineffective assistance of counsel claim is substantial. *See Martinez,* 566 U.S. at 14. This ground remains procedurally barred because post-conviction counsel cannot be found ineffective for failure to raise a non-substantial claim, especially in light of the nine claims that were raised by counsel. Ground Thirteen is denied.

### 3.  Ground Fourteen

In Ground Fourteen, Petitioner argues that trial counsel was ineffective for failure to challenge Mo. Rev. Stat. § 566.151.1, the statute regarding enticement of a child. Petitioner argues that because child is not defined, the statute is unenforceable because it is void for vagueness. He asserts reasonably competent counsel would have challenged the statute as void for vagueness, and any default is excused because of the ineffective assistance of postconviction counsel.

Petitioner cannot show postconviction counsel was ineffective under *Strickland* for failing to raise this claim, nor can he show the underlying ineffective assistance of counsel claim is substantial. *See Martinez,* 566 U.S. at 1318. Petitioner relies on a single case in support of his argument that the statute is unenforceable, citing to *Lanzetta v. New Jersey* for the proposition that uncertainty as to persons within the scope of a statute render the statute unenforceable. (Doc. 10 at 86 *citing* 306 U.S. 451 (1939)). However, he does not explain how the purported lack of

definition here renders § 566.151 unenforceable. In Missouri, the void for vagueness doctrine ensures that Missouri statutes give fair and adequate notice of proscribed conduct and protects against arbitrary enforcement. *State ex rel. Nixon v. Peterson,* 253 S.W.3d 77, 81 (Mo. banc 2008). Petitioner has not explained how the statute leaves room for uncertainty, and as the appellate court explained, "for purposes of proving attempted enticement of a minor, it does not matter whether the defendant was communicating with an actual child, an  undercover officer, or any other adult masquerading as a child younger than fifteen years-of-age." (Resp't Ex. 7 at 16 *citing State v. Faruqui,* 344 S.W.3d 193, 202 (Mo. banc 2011) (purported vagueness did not permeate statute § 566.151 where first subsection unambiguously prohibited sexual enticement of a child under age of 15 years, and second subsection states it is not a defense to a prosecution for a violation that the other person was a peace officer masquerading as a minor)). Counsel is not ineffective for failure to raise a meritless claim, and so, Petitioner cannot overcome his default. Ground Fourteen is denied.

### 4.  Ground Fifteen

Petitioner argues that trial counsel failed to investigate, develop and present expert testimony regarding Petitioner's mindset at the time of the offense and before and after trial. Petitioner contends that reasonable counsel would have retained an expert, such as Dr. David W. Cline, to testify that Petitioner suffered from post-traumatic stress disorder ("PTSD") as a result of his military combat service, and this would have provided a defense and supported the defense that Petitioner did not believe he was communicating with a person under 15 years old, as well as call into question his capacity for trial.

Dr. Cline conducted an evaluation and prepared a report in connection with this habeas proceeding. Dr. Cline interviewed Petitioner in January 2017, after he was released from custody

and found that Petitioner "is not a pedophile and that he has a normal sexual profile of adult males." (Doc. 10-9 at 7.) Dr. Cline also evaluated Petitioner for PTSD, emphasizing that Petitioner experienced five near-death experiences during his military service between 1993 and 1996. Dr. Cline opines that after repeated life-threatening traumatic events, Petitioner suffered from PTSD, with symptoms of anxiety and moderate to severe depression, and his suffering from PTSD caused him to act as he did during the incidents that led to his conviction.

In order to satisfy the *Martinez* exception, Petitioner must show that postconviction counsel was ineffective under *Strickland* for failing to raise this issue, and Petitioner must show that the underlying claim is substantial. First, Petitioner argues that his PTSD diagnosis could have been used during pre-trial in that the diagnosis could have been presented to the Court and the prosecution as a basis to dismiss the criminal proceedings against him. He argues that given the effects of his PTSD, Petitioner "threw caution to the wind and met with [Rosemann/'Angela']" not because he wanted a sexual liaison with her, but because he wanted to find out who she was. Second, Petitioner argues the PTSD defense has been found to be a viable and compelling defense when there is a connection between the defendant's PTSD symptoms and the criminal incident, although he does not point to any caselaw to support this argument. Petitioner contends that Dr. Cline would have testified that Petitioner was meeting with "Angela" because his PTSD made him hyper-vigilant to unmask a situation where he thought he was being "conned" by the contradictory and confusing information from "Angela" during their chats. "[T]he purpose of the meeting was not for sex but to unmask the chatter." Third, Petitioner argues that Dr. Cline's evaluation calls into question Petitioner's ability to assist his trial counsel in his own defense, as his PTSD would have impaired his cognitive abilities.

63

Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis*, 137 S.Ct. 2058, 2067 (2017) (citations omitted). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id.* (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). As previously discussed above, "[d]ecisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." *Forrest v. Steele*, 764 F.3d 848, 858 (8th Cir. 2014) (internal quotation marks and citation omitted). Here, Postconviction counsel did not render ineffective assistance by not raising Petitioner's claim that trial counsel should have called Dr. Cline or someone similar. Postconviction counsel raised nine points for review, including one claim based on the failure to call fifteen other witnesses. The Court finds Petitioner's claim is not stronger than the grounds raised by counsel in the postconviction proceeding.

Further, Petitioner has not shown that he was prejudiced by counsel's decision not to include this claim in the postconviction proceeding in that he has not shown a reasonable probability that the result of the postconviction proceeding would have been different. Petitioner argues that but for trial counsel's failure to investigate, develop, and present evidence of the PTSD, there is a reasonable probability that the outcome of his proceedings would have been different. Petitioner's argument is unpersuasive. Petitioner provides no legal authority or factual evidence to suggest that PTSD is a valid defense to the charges, or that the charges would have been dropped if the prosecution knew of Petitioner's PTSD diagnosis. Notably, at his postconviction proceedings, Petitioner already argued ineffective assistance for failure to call professionals relied upon by Dr. Cline in his report—Dr. Ralph Caraffa, a psychologist who treated Petitioner, and Donna Valentine, a behavioral medicine professional who evaluated Petitioner prior to trial. Dr.

Caraffa and Ms. Valentine would have opined that Petitioner did not intend to entice a person under the age of 18 to perform sexual acts with him, and Petitioner was not a pedophile and had no improper interest in women under 15. As the postconviction court explained in rejecting that claim, "none of the [] witnesses' alleged testimony would have provided Movant with a viable defense, i.e., none of the testimony would have established movant did not commit the crime of attempted enticement of child or some element of the crime." (Resp't Ex. 14 at 12.) Again, Petitioner has not demonstrated that his counsel was so deficient in investigating and presenting evidence as to meet the *Strickland* standard. Petitioner has not established "cause" or "actual prejudice" under *Martinez,* and failure to consider the claim will not result in a fundamental miscarriage of justice. Ground Fifteen is denied.

## IV.   Conclusion

Based on the foregoing, the Court finds that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The Court finds that the state court's findings and conclusions regarding Petitioner's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Further, because Petitioner has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.  (Doc 10.)

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a Certificate of Appealability is **DENIED**. A separate judgment in accord with this Order is entered on the same date.

 

 

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2021.